BATES v. KEITH.

(Circuit Court, D. Massachusetts. July 20, 1897.)

No. 647.

PATENTS—INVENTION AND INFRINGEMENT—WELT-GUIDES.

The Bates patent, No. 419,239, for a welt-guide to be used with sewing machines for sewing welts on cork-sole shoes, and in which the only essentially new feature consists in the addition to the ordinary welt-guide of another passage, concentric and elongated, adapted to guide the outside casing enveloping the core of the cork-welt, if valid at all, in view of the prior state of the art, is not infringed by a guide which passes a coupled cork-sole welt through one passage and the usual welt through the other.

This was a suit in equity by George A. Bates against George E. Keith for alleged infringement of letters patent No. 419,239, for a welt-guide for sewing machines.

James E. Maynadier, for complainant.

William Quinby, for defendant.

PUTNAM, Circuit Judge. This is a bill alleging infringement of a patent issued for a welt-guide to be used in connection with sewing machines for sewing welts on cork-sole shoes. The welts for which these guides are adapted differ from the usual welts, in that the usual welt constitutes the core for them, which core is in part enveloped in a casing, so that the welt and the casing make a compound welt, which is described by counsel as "a cork-welt." Prior to the device in suit, this cork-welt, or the core and its casing, had always been guided by hand in the process of machine sewing, and it is claimed that the complainant's guide very materially reduces the cost of the shoe. The entire pith of the device presented to the court, so far as it contains anything which can be claimed to be essentially new, lies in the fact that partly around the guide passage intended for the core, and which is admitted by the specification to be in all respects like the welt-guide in common use, there lies another passage, concentric and elongated, intended to guide the casing; so that, as the core and the casing emerge from the guide, the casing will take exterior concentric shape around at least one edge and one surface of the core. The specification of the claim describes various details, among which are edge-guides and the rib intended to enter the ordinary groove in the welt; but all these incidentals are necessary elements which will be found in every welt-guide; so that it is maintained by the complainant that the single essential feature is that the device has two passages, one for the core and the other for the casing, arranged substantially as we have described. Therefore the complainant further maintains that not only is his device a tool, as distinguished from a mere combination, but that also the detailed elements stated in his claim are not essential in connection with the consideration of alleged infringements. The court need not stop to consider what the complainant means by characterizing his device as a tool, or whether such a distinction has any foundation; nor whether the complainant's proposition as to the construction of his claim, assuming it to cover a combination, is correct, or whether, on the other hand, under the circumstances of the case, the claim is not to be construed strictly, and all the elements enumerated therein to be held essential, on the rules stated in Reece Buttonhole Mach. Co. v. Globe Buttonhole Mach. Co., 10 C. C. A. 194, 61 Fed. 958, 961, and in Wright v. Yuengling, 155 U. S. 47, 52, 15 Sup. Ct. 1. So far as these propositions are concerned, we, for the purposes of this case, yield to the complainant the benefit of his entire invention, and assume that his claim is such as to cover the whole of it. Nevertheless, with reference to the extent of his invention, we must regard the state of the art, and we must also, with due regard for exceptional cases, regard the rule laid down by the court of appeals for this circuit in Long v. Manufacturing Co., 21

C. C. A. 533, 537, 75 Fed. 835, 839, and restated in Boston & R. Electric St. Ry. Co. v. Bemis Car-Box Co., 25 C. C. A. 420, 80 Fed. 287, 290, as follows:

"It is plain, nevertheless, on all rules, that so much of the mere form given in the specification, drawings, and claim is essential, and must be retained, as is necessary in order to accomplish all the functions expressly enumerated therein."

Therefore the whole case comes down to the questions: First, whether there is a patentable invention in making a double guide of the general character which we have described; and, second, whether, if there is anything patentable in such a device, the invention which it covers can be regarded as of so broad a nature that the device of the respondent can be held to infringe. We refer again to that part of the specification which says that the device is connected to the lever of a welt-sewing machine too well known to require description; that it is connected to this lever by a tang in the usual way; that, like the welt-guide in common use, it has a guide passage for the single welt constituting the core of the compound welt; that this passage is the same as that in common use, with some changes which are clearly mere matters of detail; and that the edges of the walls of the guide are slotted and curved, "being," as the specification says, "in this respect the same as the cover in general use." The specification further proceeds that, in operation, one end of the core is placed in its proper passage, and one end of the casing in its proper passage; that a lasted shoe is then presented to the machine, the awl passing through the core and the casing, and also through the upper and a part of the inner sole, precisely as in sewing on the ordinary welt; that, after the core and its casing are thus sewed to the upper and inner sole, the product is the same as if they had been sewed on by hand; and that "the other operations to complete the shoe are in all respects the same as usual in making this kind of shoe." This makes it entirely clear that the only novelty is the superimposing on the usual passage for a welt the concentric overlapping passage to which we have referred, also intended for the casing. The specification also shows clearly that the patentee had in contemplation, so far as his device was concerned, nothing beyond that subdivision of the art of sewing welts which concerns welts of the compound character which we have described. A proposition of this kind does not necessarily limit the rights of a patentee, because the law has been stated over and over again that this fact alone would not prevent the inventor from reaping the advantage of any function which could be found to be within the claim as properly construed, available without a modification of the machine which involves the use of further inventive faculty, although known to him, and omitted in the specifications without fraud, or not known to him. Long v. Manufacturing Co., at page 535, 21 C. C. A., and page 837, 75 Fed. The proposition, however, becomes important in connection with other facts to which we will call attention.

The respondent constructed his device in accordance with a patent held by him, so that, perhaps, on the ordinary rule, so far as any presumptions arising from the issue of a patent are concerned, the par-

ties stand in equilibrio. The purpose intended to be accomplished by the respondent, and shown by the device actually used by him, was plainly in accordance with the statement of the specification of his patent as follows:

"The object of my invention is to provide a shoe-sewing machine with a guide capable of properly presenting to the action of the awl and needle an imitation cork-sole welt, as well as the usual welt, and supporting these welts firmly against any lateral motion or 'creeping' out of their proper path of movement."

Thus he commences with the compound welt as a completed element; and so it happens that, instead of the ordinary guide passage for the core, with the overlapping concentric passage for the casing, the passages of his guide are adapted to pass the completed corksole welt through one passage with the usual welt through the other, and are in no essential respect like the complainant's guide, as shown in his specification and drawings, except in the fact that it contains two guide passages. The respondent's device is, therefore, incapable of performing the essential and only function had in contemplation by the complainant's specification. This fact, in connection with the rule stated in Long v. Manufacturing Co., ubi supra, that so much is essential as is necessary to accomplish all the functions expressly enumerated in the patent, is sufficient to dispose of this case; but we can take a somewhat broader view of it. Guides used in connection with sewing machines, and for innumerable other purposes, have been so common in the arts, and have been used from time immemorial for so many purposes, that it would be an unreasonable state of the law which would deny as a common right to every artisan and manufacturer freedom to procure or frame guides suited for his art, or for his particular subdivision of any art. In this respect it is impossible to draw any essential distinction between the common right and privilege of every person to adapt guides to his own peculiar necessities and the like right to shape gouges or plane-irons, or combine them of different shapes, according to the changing necessities or desires of carpentry, or to devise, subdivide, and change the forms of boxes, or other packing cases, according to the necessities of each particular trade. It may be that for any established art, or any subdivision of any special art, there would be invention in so adapting or shaping guides, gouges, packing boxes, or any other common tools and means, as to adapt them to the special art or to the special subdivision; but whoever does this cannot, where the field is so common, encroach on any other person's special art or subdivision. Therefore, in this case, with reference to so common a device as a guide, even if the complainant could successfully maintain that there is invention in devising one suitable for the particular purpose which he had in mind,—that is, for directing the two elements of a compound welt in the manner pointed out in his specification,—yet he could not prevent the respondent from adapting and freely using a guide which would be suitable for his own special subdivision, although in the same general art. Therefore, if the patent covers anything which is patentable, which may well be doubted, any claimed construction of it which would bar the respondent from using the guide especially

devised by him would, in view of the considerations we have stated, be too unreasonable to be sustained. In view of our conclusions in other respects, the mercantile considerations urged by the complainant have no application to this case. Manufacturing Co. v. Holtzer, 15 C. C. A. 63, 67 Fed. 907; De Loriea v. Whitney, 11 C. C. A. 353, 63 Fed. 611, 621. Let the respondent, on or before the 2d day of August next, file a draft decree dismissing the bill, with costs, and complainant, on or before the 5th day of August next, file corrections thereof.