BALL & SOCKET FASTENER CO. v. C. A. EDGARTON MFG. CO.

(Circuit Court of Appeals, First Circuit. May 26, 1899.)

No. 262.

PATENTS—CONSTRUCTION AND INFRINGEMENT—GLOVE FASTENERS.

The Richardson patent, No. 412,296, for improvements in fastenings for gloves and other articles, if it involves any patentable novelty or invention, must, especially in view of the fact that it has never been put to practical use, be limited to the precise form shown and described, and is therefore not infringed by the fastener of the Adams patent, No. 566,731.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

This was a suit in equity by the Ball & Socket Fastener Company against the C. A. Edgarton Manufacturing Company for alleged infringement of letters patent No. 412,296, issued October 8, 1889, to W. S. Richardson, for improvements in fastenings for gloves and other articles. The circuit court dismissed the bill, and the complainant has appealed.

George O. G. Coale and Frederick P. Fish (Clarke, Raymond & Coale, on the brief), for appellant.

Charles E. Mitchell and John P. Bartlett (Mitchell, Bartlett & Brownell, on the brief), for appellee.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

PUTNAM, Circuit Judge.    This suit relates to a patent, of October 18, 1889, to William Streeter Richardson, for improvements in fastenings for gloves and other articles. The specification describes the invention as relating to constructing the ball and socket members of the device, and to fastening the same in place. We must apprehend that, though some of the advances in this art are, on their face, trivial, yet a careful examination will show that the art is a difficult and important one. Fastenings of this character are in extensive demand for various purposes,—gloves, corsets, clothing, and, as is shown in this case, suspenders. It is necessary that the fastening should be light, attractive, quick and easy to open and close, inexpensive, and yet so firmly constructed as to resist a constant and relatively great transverse pull, without tearing the light material with which it is used. It was only after a long time that success was achieved, and this by small steps. The art is divided into two lines, one known as that of ball and socket fasteners, and the other buttonhole or cap fasteners. The patent in issue relates especially to the latter class. The claims in issue would not be understood without first giving references to the specification. This says, in substance, that the cap and yielding sides, necessary in order to close over and hold the stud, are made integral; and the drawings attached represent a blank which, when struck into shape, provides the cap, two

yielding sides, and two fastening arms. The fastening arms are designed, as the specification shows, to pass through the material of the glove and a washer on the other side of the material, so as to hold the whole firmly together. For an alternative form the specification makes the fastening arms integral with the washer. The cap is shown with an "inclined shoulder," which, operating as a flat surface, may lie closely against the material on the other side from the washer, thus contributing to firmness of hold. The drawings which show the blank indicate the fastening arms as resulting from two opposing projections, and the yielding sides from two other opposing projections. Nothing in the patent suggests that there are more than two fastening arms or more than two yielding sides. The drawings also show the blank in various forms to the completion of the cap, and the specification has a full description of the various processes in producing the cap from the blank.

The claims in issue are as follows:

"1. The fastening comprising the cap, $a^3$, having the yielding sides, $a^1$, washer, b, and the connecting arms, $a^2$, all substantially as and for the purposes described.

"2. The combination of the cap, $a^3$, having the inclined shoulder, $a^4$, with the washer, b, inclined as described, and fastening arms, $a^2$, all substantially as and for the purposes described.

"3. The combination, in a fastening device, of a capped socket comprising the cap, $a^3$, the yielding sides, $a^1$, integral with the said cap, and bent in relation to the same to form the shoulder, $a^4$, as specified, and to extend downwardly from said shoulder, with fastening arms for attaching the cap to the material, all substantially as and for the purposes described."

The alleged infringing device is shown in a patent issued to one George E. Adams, dated September 1, 1896. ' This also is made up from a single blank, star-shaped, as shown in the drawings attached, and having eight points. This is developed into a cap with eight projections, turned back on the washer in such way that they all of them answer as fastening arms. It is claimed in defense that this device has no "yielding sides," as called for by the patent in issue. Nevertheless, the specification of the Adams patent describes the projections as "resilient arms," and points out that they may be bent to afford a good bearing, and at the same time allow sufficient movement to permit of the ready passage of the stud member. It also, at various points, calls these projections "resilient fingers." It is evident that the projections in the alleged infringing device perform the functions of the "yielding sides" and "fastening arms" of the patented device, so that the projections of the alleged infringing device are both fastening arms and yielding sides, and would clearly infringe the claims in issue if the latter could have breadth of construction. The construction of the patent is not free from difficulty. It contains much which requires that we should hold that the invention consisted in producing the cap from a single blank, so as to be of the nature of the invention in issue in Krementz v. S. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719. That patent was granted on May 6, 1884. The

specification described a collar button built up from a single, continuous plate of sheet metal.    It also described the method of making the button.    It was shown in that case that other articles had previously been made in a similar manner, but they were in other arts.    The court held, at page 559, 148 U. S., and page 720, 13 Sup. Ct., that the button was "a new and useful article, with obvious advantages over previous structures of the kind."    It was claimed that any ordinary mechanic could have adapted the previous devices to a collar button, but, at page 560, 148 U. S., and page 720, 13 Sup. Ct., the court observed upon the fact that the president of the infringing company, although skilled in the art, and having had his attention specially turned to the subject-matter, failed to see for a long period of time what the inventor afterwards saw.    It is also evident that forming the collar button from a single blank, as shown in the case cited, involved very much ingenuity.    The patent in issue in Krementz v. S. Cottle Co. antedated the application for the patent at bar, so that what it disclosed must now be commonly regarded as a part of the prior art; and it is an old rule that we may read the decisions of courts of high authority for the purpose of ascertaining facts of general interest.    In this particular art of fasteners, the patent issued to Kraetzer on September 28, 1884, antedating that in suit, speaks of forming a cap, with arms and elastic jaws, from a single blank, as though it were a well-known matter.    Also, a prior patent, issued to Mr. Richardson on May 1, 1883, shows a socket made up of a single metal blank, which included a cap with a resilient base. That patent concerned more especially what are known as "ball and socket fasteners," but, so far as the use of a blank is concerned, it involved the same problem as the claims in issue.    Similar blanks for similar purposes are found elsewhere in the record.    Therefore, if the patent is to receive this construction, it is extremely doubtful whether it covers any inventive idea.    Assuming, on the other hand, that the patent is for the device, and that producing it from a single blank is only an alternative method, the same doubt as to patentability arises in view of the state of the art, notwithstanding what we have said to the effect that, in this particular art, improvements which, on their face, seem trivial, have at times been regarded as meritorious.    We need, for this purpose, to look only at the Kraetzer patent, already referred to.    As already said, the patent in suit describes a hood with four projections,—two the fastening arms, and two the yielding sides,—and the specification states that it is not essential that the fastening arms be made integral with the cap, and it describes an alternative construction in which the fastening arms run up from the washer.    Claim 2 shows the cap overhanging at its base, so as to make what we have already called an "inclined shoulder." This shoulder, however, is of no consequence in this case, as it is not found in the alleged infringing device in the form shown by the patent in issue; and, since flanges are of all forms of construction, and as common in the arts as anything can be, every manufacturer has,

ordinarily, a right to construct them in his own method. The result is that, in this case, all which the patent in issue demands is a cap integral with the yielding sides, and a washer, with arms intended to secure the washer to the cap, built either upon the washer or the cap. The Kraetzer device had all these, although the parts were somewhat differently related. Its fastening arms were always a part of the cap, and the yielding sides always a part of the washer. The arms projected from the cap, as in the patent in suit. The yielding sides were made by cutting away and turning down two portions of the disk from which the washer was formed. The practical result in use is, in all respects, the same in each device. The complainant maintains that one advantage of the device in suit is in the capacity of varying the dimensions of the blank. It refers to what it calls the "spring jaws," meaning, probably, the "yielding sides." It is claimed that, in the device in issue, the "spring jaws" may be of any length, while, in the Kraetzer device, they are necessarily cut from the middle of a disk, so that their length is limited. This, however, so far as the "yielding sides" are spoken of, is based on a mistake. There is nothing in the device in issue which calls for their unlimited lengthening, and the same is true as to the Kraetzer device. The patent in issue shows that the inventor had in mind the indefinite lengthening of the fastening arms only, and this is practicable in the Kraetzer device. Also the complainant maintains that its device reduced the number of the parts in a spring buttonhole cap, which, it says, had never before been made in less than two parts in addition to the washer. This is a mistake, even if it covered anything patentable; because, in the Kraetzer device, there are only two parts, including the washer, as his patent provided that the cap and fastening arms should be integral. It is therefore difficult to perceive that there was any real advance in the art from the Kraetzer patent, unless it was with reference to the inclined shoulder, which is not involved here. The difficulty of determining whether or not the patented device shows any substantial advance in the art is increased by the fact that complainant's expert, who undertakes to set out its advantages, never saw it in use; and he therefore speaks of it only theoretically, and can have no knowledge of its practical disadvantages. The patent was applied for in 1884, so that the device was known for over 12 years before this bill was filed; and yet during the whole of that period it never has been put to practical use. If the case had been otherwise, the practical result might have enabled us to give the patent the support which might have come therefrom. Boston & R. Electric St. Ry. Co. v. Bemis Car-Box Co., 25 C. C. A. 420, 80 Fed. 287, 288. This use might have developed advantages which we are not able to gather from the device itself, or from anything which the record discloses to us in any satisfactory manner. Taking, therefore, the case as a whole, whether there is any patentability or not, we are unable to give the claims in issue any broader construction than was given the patent to Masten for

an alleged invention with reference to firecrackers, which was under consideration by this court in Masten v. Hunt, 5 C. C. A. 42, 55 Fed. 78. In that case it was held that infringement was not proved, the opinion of the court stating that it agreed with the circuit court in the reasons given in its opinion in the same case, which it adopted. The opinion of the circuit court is found in 51 Fed. 216. The patentee did not show the court what were the real advantages and extent of his alleged improvement, and therefore the court was unable to find infringement in anything which did not respond precisely to the form and letter of the patent. Considering the facts which we have pointed out in the case at bar, especially the fact that the complainant's improvements were, at the most, so slight as to leave grave doubts as to their patentability, we cannot, on the question of infringement, safely hold that the claims in issue cover anything more than mere form. Therefore, in view of the marked changes in form between the sheet-metal blank and device of the respondent from the blank and device of the complainant, and in view, also, of the fact that there is some change in the way in which the device of the respondent performs its functions, we cannot find that there has been any infringement. The decree of the court below is affirmed, and the costs of appeal are awarded to the appellee.