BOSTON & R. ELECTRIC ST. RY. CO. v. BEMIS CAR-BOX CO.

(Circuit Court of Appeals, First Circuit. November 10, 1899.)

No. 292.

1. PATENTS—SUIT FOR INFRINGEMENT—BILL OF REVIEW.
    There is no absolute rule which prevents a party who has relied wholly on certain issues in the original cause from filing a bill of review on a new issue not raised in the suit, or not litigated; but where a defendant engaged in the manufacture of an article covered by complainant's patent, with knowledge of the patent, in reliance on the protection of a patent of its own, on which it also relied in a suit for infringement, it is not entitled to file a bill of review, based on newly-discovered evidence, attacking the validity of complainant's patent on a new ground, which had not influenced its actions, unless it presents considerations which appeal with especial force to the chancellor's conscience.

2. BILL OF REVIEW—APPLICATION TO APPELLATE COURT FOR LEAVE TO FILE.
    Where a petition is filed in the circuit court of appeals for permission to file a bill in the circuit court to review a decree which has been affirmed on appeal, and the issues raised are such as, if sustained, necessarily require a reversal of such decree, but are of such a character that they cannot properly be determined on affidavits, permission will be given to file the bill in the lower court, provided the petitioner shows himself free from laches, and entitled to raise the issue. In re Gamewell Fire-Alarm Tel. Co., 20 C. C. A. 111, 73 Fed. 908, followed.

3. SAME—PETITION FOR LEAVE TO FILE — QUESTIONS CONSIDERED BY APPELLATE COURT.
    While, on a petition to an appellate court for leave to file a bill of review, the question of materiality is ordinarily for that court to determine, and the question of laches for the court below, which has the entire record before it, yet where the petition sets out all the facts necessary to dispose of the question of laches, and shows the petitioner's want of due diligence, while the question of materiality cannot be properly determined on the showing made, the petition will be denied on the ground of laches.

4. PATENTS—SUITS FOR INFRINGEMENT—BILL OF REVIEW—LACHES.
    A defendant in a suit for infringement of a patent, who, during a protracted litigation, based his defense entirely on the grounds of anticipation by prior patents and noninfringement, is debarred by laches from the right to file a bill of review based on newly-discovered evidence claimed to show that complainant's patent is void on the ground of prior public use by the patentee, where the petition fails to show that any investigation of the question of prior use was made until nearly 10 years after the litigation commenced, although formal issue was joined thereon in the suit, and that the evidence set out was at once discovered when such investigation was instituted. Especially should the filing of such bill be denied where the petition therefor shows affirmatively that by reason of the lapse of nearly 20 years since the alleged prior use, and the death of persons having knowledge of the facts, it will be difficult to satisfactorily determine the question.

Francis Rawle and Edward Wetmore, for petitioner.

Arthur v. Briesen and Antonio Knauth, for defendant.

Before PUTNAM, Circuit Judge, and ALDRICH and BROWN, District Judges.

PUTNAM, Circuit Judge. This petition arose out of a bill brought in the circuit court for the district of Massachusetts on July 2, 1890, by the Bemis Car-Box Company, the present respondent, against the Boston & Revere Electric Street-Railway Company, the present petitioner, for the infringement of a patent for an invention issued to Sumner A. Bemis on the 5th day of April, 1881. Such proceedings were had on the bill that on August 10, 1896, an interlocutory decree was entered in favor of the complainant for a master and an injunction, from which an appeal was taken to this court, where on April 21, 1897, the decree of the circuit court was affirmed on its merits (25 C. C. A. 420, 80 Fed. 287); and such further proceedings ensued that a final decree against the respondent in that case was entered in the circuit court on May, 1, 1899. The petition was filed in the interest of the J. G. Brill Company, which corporation manufactured the infringing device, and was concerned in the defense of the suit in the principal cause, if it did not entirely assume it. The petition avers that in October, 1898, the J. G. Brill Company received from an unexpected source information which proved to

be the clew to a very large amount of evidence of prior public use, shown by the petition; being mainly, if not entirely, that of prior public use by the inventor for more than two years before his patent was applied for. The prayer of the petition is that the petitioner may have permission to apply to the circuit court for leave to file a bill of review to bring forward the newly-discovered evidence referred to, and to have the principal cause reheard.

Leave was duly granted by this court to file the petition and the proofs accompanying the same, and a summons to show cause was issued to the Bemis Car-Box Company, and it answered and filed its affidavits in reply. Also, in accordance with leave granted, briefs for both the petitioner and the respondent were filed; and, afterwards, by special order, the cause was orally argued at this term. The practice in matters of this character was quite fully explained by this court in Re Gamewell Fire-Alarm Tel. Co., 20 C. C. A. 111, 73 Fed. 908, by an opinion passed down on April 23, 1896. In Post v. Electrical Co., 32 C. C. A. 151, 89 Fed. 1, 5, in an opinion passed down on June 14, 1898, we gave a summary of all the cases where questions of this character have been raised before us.

It is clear that, after the petitioner received the clew to the new evidence to which the petition relates, it proceeded with great diligence in perfecting its case and bringing it before this court.

The bill in the original cause contained the usual allegation that the alleged invention had not been in public use or on sale for more than two years prior to the application for the patent, and the answer contained a formal denial of that allegation. No proofs, however, were taken in the original cause with reference to that allegation; so that, so far as it was concerned, the case stood on the presumption raised by the granting of the patent, and no practical issue was made with reference thereto. There is no indication whatever in the record in the principal cause that the petitioner justified the use of the patented device on the issue of alleged prior public use. The question has been made whether, ordinarily, equity requires that a bill of review should be permitted to be filed on a new issue which might have been presented in the principal cause, but was not. On general principles, it would seem that there would be no equity in this behalf, unless in very exceptional cases.

In Young v. Keighly, 16 Ves. 348, 354, decided in 1809, Lord Chancellor Eldon remarked that the decisions allowing bills of review are not applicable where the original cause did not admit the introduction of the evidence, as not having been put in issue. Mr. Justice Story, in Dexter v. Arnold, 5 Mason, 303, 313, Fed. Cas. No. 3,856, apparently regarded this as the general rule. Nevertheless the later authorities do not permit a formulated rule of this character; and, as no fixed formula can ever be laid down, limiting equity as to relief against error, fraud, or misfortune, all that can be said in this behalf is that, under some circumstances, the fact that a petitioner for review was originally contented to rest his case on certain issues ought to bar him from calling on equity to aid him to present new issues after he has been defeated as the

result of protracted litigation in the principal cause. The petition in this case does not deny that when the J. G. Brill Company, in whose interest it is presented, commenced to manufacture the infringing device, it had been informed of the existence of the complainant's patent. On the contrary, it had a patent of its own, relating to the same subject-matter, issued on December 31, 1889, under which it claimed the right to manufacture the infringing device; and, both on this account and on account of its extensive interest in the industry, it presumably had full knowledge of the condition of the art, including the patent in suit. It thus appears that the J. G. Brill Company was content to proceed to manufacture the infringing device, relying solely on the defenses stated; and, in equity, it ought to stand there until it presents considerations which appeal with especial force to the chancellor's conscience.

Aside from the question of diligence, which we will consider later, there arises the question of the materiality of the new proofs offered by the petitioner. The rule as stated in Story, Eq. Pl. (10th Ed.) § 413, is to the effect that the new matter should be such as, if known, "might probably have produced a different determination"; and it is also laid down in practically the same language in Daniell, Ch. Prac. (6th Am. Ed.) *1577. The rule on this point is stated quite as favorably for the petitioner in Re Gamewell Fire-Alarm Tel. Co., 20 C. C. A. 111, 73 Fed. 908, as anywhere. It is said there, at page 913, that the circumstances in that case were such that there would be "a reasonable probability that the proofs, if they sustained the allegations of the petition, would require reconsideration from us if the case should come here again." In the present case the new issues, if sustained, would clearly require a reversal of the judgment in the principal suit. In the case last cited, although it was said that the question of materiality is usually for the appellate court, yet the proofs were of such a complicated character that they required investigation according to the ordinary methods of judicial proceeding, which could not be had in this court on affidavits. In that particular the case at bar corresponds fully. The issue which the new proofs raise, if determined in favor of the petitioner, would, as already said, necessarily lead to a reversal of the judgment already entered; but the proofs now brought to our attention are so contradictory, cover so large a field, and relate to matters so long gone by, that it would be impossible for us to sift out the case properly on mere affidavits. It is therefore plain that if the petitioner can be permitted to raise this new issue, and has not been guilty of laches, the new proofs now offered should have an investigation in the court below.

With reference to the nature and degree of diligence which must be shown in a petition of this character, Lord Bacon's rule, as given by the supreme court in Purcell v. Miner, 4 Wall. 519, 521, requires that the new proof "could not possibly have been used at the time when the decree was passed." Story, Eq. Pl. (10th Ed.) § 414, says that it must be such as the party, by the use of rea-

sonable diligence, could not have known. The necessity of enforcing this rule strictly, with reference to anticipatory matter, was stated in Re Gamewell Fire-Alarm Tel. Co., already cited; and the new defense now sought to be raised is of the same family.

In Young v. Keighly, 16 Ves. 348, 354, Lord Eldon suggests an illustration in the way of an omission to look into a box for instruments which no human prudence would have suggested, and he says that such an omission will not prevent a bill of review. This, of course, is an extreme hypothesis. The petitioner claims to bring itself within that illustration, because it alleges no diligence whatever with reference to searching for the class of facts covered by its petition, and maintains that it came upon them accidentally, and that they could not have become known in any way except by accident. There seems to us, however, no analogy between this case and Lord Eldon's illustration, which would excuse all omission to look for proofs in the early stages of the litigation. It is true that the petition alleges, generally, diligent efforts on the part of the respondent in the principal cause with reference to ascertaining the facts proper for defense. This must, however, be qualified by the fact already referred to, that the petition states what is true, as we have said, that the defenses in the principal suit were limited to alleged anticipation by earlier patents and to noninfringement; and, in the absence of details showing otherwise, these general allegations in respect of diligence must be assumed to be limited to searches with reference to those particular issues. Therefore, on the question of diligence, it is impossible to sustain the petition, except on the theory of the illustration given by Lord Eldon.

This, of course, lays outside of the case numerous instances in which bills of review have been allowed on the strength of facts which have accidentally come to light within the field of prior investigation; for example, cases such as this would be if the J. G. Brill Company had made diligent efforts to find proofs to show prior use by either the patentee or any other person, and had failed to find the thread which was found accidentally after the judgment in the principal case, as alleged by the petitioner. The only question, therefore, is whether the proposition can be maintained that the want of any efforts whatever to investigate the question of prior use can be excused on the theory that, if the efforts had been made, the probability is that no result would have come from them. The categorical answer is that, while the efforts might not have been fruitful in results, on the other hand there is no improbability that they would have been, and the facts of the case itself show that the omission to search was not an omission to look into a field "which no human prudence would have suggested."

It is to be borne in mind, first of all, that the bill in the principal case was filed on July 2, 1890, which was nearly 10 years ago, and that the time to which any investigation would have related was the latter part of 1878 or the earlier part of 1879; so the filing of the bill divided into nearly equal portions the period with reference to the beginning of which the petitioner was compelled to make

the search to which its petition relates. It is self-evident that an investigation made at the middle of this period would have been much more likely to yield results than one made at its close. Moreover, as we have already said, the case shows that the J. G. Brill Company was during all this time very extensively engaged in the art to which the patent in suit relates, and had extensive dealings with a great many street-car companies scattered over the United States, so that it had unusual facilities for making an investigation of this kind.

Particularly, the probability that an investigation made about the time the principal suit was commenced would have yielded results cannot be denied, in view of the very broad case made by the petition. This is summed up in that part of the petition where it states that the prior use was on 10 different street railways detailed by it,—among the rest, such well-known lines as the Brooklyn Street Railway, the Seventh Avenue Railway of New York City, the Middlesex Railway of Boston, the Union Railway of Providence, the Citizens' Line of Baltimore, and the street railway at Springfield, Mass. It is not only probable, but it seems almost manifest, that if the J. G. Brill Company, with its facilities, had made inquiries, even by correspondence, of the officers of these various railways, with many of whom, presumably, it was dealing, it would readily have been put upon the track of substantially all which it has lately discovered. The petitioner's brief maintains that Bemis, the inventor, was, in the early days to which its new proofs relate, only a mechanic, doing a small business at Springfield; but he was not unknown, and the patent in issue gave his residence at that city. If any attempts had been made 10 years ago to investigate the question of prior use by him, which particular prior use is the main burden of the petition, it cannot be doubted that it would have occurred to any thoughtful person to have commenced them at Springfield; and, according to the matters alleged in the petition, if that investigation had been made the J. G. Brill Company would have at once come upon the strongest line of proofs now presented.

The petition states that in May, 1899, the counsel of the J. G. Brill Company visited Springfield to investigate the matter of prior use, and called on an officer of the railway company who had been in its employ since 1876; that the officer stated generally the facts; that the counsel found one Pierce, whose affidavit is in the case; and that after he found Pierce, which was on the day after he reached Springfield, his investigations were easily completed. Pierce claims to have been in the employ of the company in 1877, and for many years thereafter. The counsel went with Pierce to the old car barn of the railway company, and there found four exhibits, which Pierce dates as early as 1877, and one of which is produced in court as demonstrating prior use. The affidavit of Pierce was taken on the same day, and on May 4th the counsel took the affidavit of one Johnson, who claims to have been in the employment of Bemis in August, 1878, and to have remained with him for several years, and whose affidavit supports the petitioner's case. As already said, these affidavits give the strongest support to the petition of

anything found in it, yet the whole investigation covered less than four days. The circumstances which we have stated show, however, that if the J. G. Brill Company had cared to make the defense, nominally raised by the allegation in the bill and the denial in the answer, with reference to prior use by Bemis, it would, without any difficulty, at or about the time the suit was commenced, have come at once upon the most important facts in its behalf, and thus the thread for all the other facts, on making inquiry in the locality where inquiry would naturally and probably have been made.

It is true that the case thus made by the petitioner with reference to the prior use at Springfield is squarely met by the denials of Bemis and of one Hoadley, who had peculiar opportunities of knowing the facts; but this is not of importance on this particular topic, which relates only to the case as made by the petitioner, although it becomes of importance with reference to another proposition to be spoken of further on.

In all its aspects, the petition makes a case to which the general rules of laches have special application. The affidavit of Martin Brill in behalf of the petitioner states that in 1890 and 1891, which was the very time when the pleadings in the principal case were being made up, and when the J. G. Brill Company should have entered upon its investigation, the era of electrical propulsion of street cars had come; that many street railways had then become electrically equipped; and that this led to radical changes in the running gear, so that cars and equipments were rendered useless and given up. This statement is made as a leading fact to exhibit the difficulties which the petitioner met with in the investigations resulting in the new proofs set out in its petition. On the other hand, it shows equally serious difficulties, which, if a review were permitted, would now rest on the patentee in meeting the issue of prior use, in excess of those which would have rested on it if the issue had been seasonably raised.

Mr. Brill further refers in this same connection to the fact that the subject-matter of the patent in issue relates to interior details of construction, not likely to be known to or observed by more than one or two employés of each railway company; but this difficulty was easily met in the Springfield case, and it might have been met as easily in all the other cases, for aught that appears, if seasonable investigation had been made.

The peculiar necessities which render proper the application of the rules relative to laches, and the difficulty of reaching the precise facts in behalf of the patentee with reference to transactions of so early a day, are especially illustrated in this case, by the fact that this petition succeeds the death of one King, who, it appears, was not only the superintendent of the Springfield Street Railway, but was also concerned in the getting up of the precise car-wheel boxes at that city to which the affidavits relate. The petition also states that the investigations which it describes had been pursued with a great deal of diligence, but that, inasmuch as the period to which they apply is more than 20 years prior to the present time, most of the employés of the various railway companies had left

their employments, or had died, or could not be found, or, if found, could not remember the occurrences in question; and the petition, at various points, gives the details of the difficulties which were met, in several particular instances, in searching for the various witnesses whose affidavits are appended to it. Whatever difficulties of this character may have stood in the way of the petitioner stand equally in the way of the patentee, and render it all the more necessary to regard the rule stated in Craig v. Smith, 100 U. S. 226, 234, that the discretion of the court in reference to bills of review should be "exercised cautiously and sparingly, and only under circumstances which demonstrate it to be indispensable to the merits and justice of the cause."

The petitioner urges that the respondent stands in the position of asking a court of equity to sustain a decree based upon untruth because it would be inequitable to have the truth proved. It is true that ordinarily, in equity, there is no bar which runs against fraud or perjury, which is one species of fraud, until the fraud or perjury has been discovered; but to admit the petitioner's proposition, under the circumstances, would be to reason in a circle. All the allegations of the petition, so far as they touch the question of prior use, are squarely met by sworn affidavits, including that of the patentee. To yield to this proposition of the petitioner would substantially annul the rule of diligence with reference to all patent causes, so far as concerns the defenses of anticipation and prior use; yet it is in connection with these classes of defenses that it is especially necessary to insist on the rule, for reasons often given, which it is not necessary to reiterate here.

In Re Gamewell Fire-Alarm Tel. Co., 20 C. C. A. 111, 73 Fed. 908, already referred to, it was said, at pages 912 and 913, that, on petitions of this character, questions of two classes arise,—materiality and laches,—and that the question of laches is ordinarily for the court below. The reason given for this was that an appellate court, in dealing with an appeal, considers, sometimes, only portions of the record, and is usually ignorant of the details of the history of the case, and thus ordinarily fails to have before it the elements which would enable it to determine properly the question of laches. Instances were, however, referred to in which the supreme court, on proceedings of this character, passed on both the questions of materiality and laches; and other cases of the same kind may be found. In closing, the opinion, at page 914, observed that the question of laches involved in that case too many elements not considered on the appeal, and too many matters not appearing of record in the circuit court of appeals, to permit attention from that court; and therefore that question was remitted to the circuit court. In the case at bar, however, we have a formal petition, setting out all the facts necessary to dispose of the question of laches, while, as already said, the affidavits are so contradictory that the court cannot properly dispose of that of materiality, although ordinarily it is for the appellate tribunal. On the whole, the result is clear that we ought not to aid the respondent in the original cause to shift its position at this late day, under the circumstances we have stated,

and ought not to protract the litigation by remitting the case to the lower court for any purpose whatever.

The petition is denied, with costs for the respondent.