INTERNATIONAL POSTAL SUPPLY CO. OF NEW YORK v. AMERICAN POSTAL MACHINES CO.

(Circuit Court of Appeals, First Circuit. October 9, 1907.)

No. 664.

1. PATENTS—INFRINGEMENT—STAMP CANCELING MACHINES.
    The Laass and Hey patent. No. 388,366, and the Hey patent, No. 632,-527, for stamp canceling machines of the type in which the letter actuates the printing mechanism, construed, and *held* not infringed.

2. SAME.
    Bates v. Keith, 84 Fed. 1014, 28 C. C. A. 638, as to implements of universal use, applied, and decision of the Circuit Court of Appeals for the Second Circuit in Groth v. International Postal Co., 61 Fed. 284, 288, 9 C. C. A. 507, followed.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 141 Fed. 969.

Arthur E. Parsons and Benjamin Phillips (Alfred H. Hildreth, on the brief), for appellant.

William K. Richardson (Alexander D. Salinger, on the brief), for appellee.

Before PUTNAM, Circuit Judge, and ALDRICH and BROWN, District Judges.

PUTNAM, Circuit Judge. This is a bill in equity for the alleged infringement of three patents, as follows: The first, issued on May 4, 1886, to George W. Hey and Emil Laass, on an application filed February 26, 1884, No. 341,380; the second, issued on August 21, 1888, to George W. Hey and Emil Laass on an application filed on June 2, 1884, No. 388,366; the third, issued on September 5, 1899, to George W. Hey, on an application filed on September 17, 1884, No. 632,527. The Circuit Court dismissed the bill, and the plaintiff appealed to us, limiting its appeal to the second and third patents, namely, No. 388,366 and No. 632,527.

The specification of the first patent states that it is for "improvement in marking and stamping apparatus," and that the object of the invention was to mark or stamp mail matter and analogous articles in an expeditious manner, and that, to this end, the invention consisted of novel means for automatically applying the stamp. There were 18 claims in all. The only one we need now notice is the following:

"4. In combination with a letter-supporting bed, a carrier for moving the letter over the bed, a stamp or marker, and a mechanical engaging-finger to engage the moving letter and transmit motion to the stamp or marker, substantially as described."

The application for the second patent—that is, No. 388,366—contains the following:

"Our invention relates to improvements in stamping apparatus of the character set forth and fully described in our application for letters patent filed February 26, 1884, patented May 4, 1886, No. 341,380; and it has for its object the production of an apparatus with which letters and mail-matter generally may be automatically stamped while the said letters or mail-matter are in transit on a letter-supporting bed, over which the aforesaid mail-matter is moved; and the invention consists, essentially, in the combination, with the letter-supporting feed-bed, of a stamp normally out of the path of movement of the mail-matter and a stamp tripper or releaser normally in said path."

The application then proceeds to state some further details to which the patent relates. At the close the following appears:

"We do not claim, broadly, the combination with a letter-supporting feed-bed, of a movably-supported marking-roller, held intermittently in the letter-path; neither do we claim, broadly, the combination, with a letter-feed, of a marking-roller and a contact-finger connected to operate the marking-roller without stopping the letter to control the registry of the marking die thereon, the same forming the subject-matter of a separate pending application in favor of George W. Hey."

It is apparent that these extracts from the application for patent No. 388,366 were not completed when the application was filed, because the first one refers to a subsequent date of May 4, 1886. The second one is confused, but, probably, it refers not only to the application for patent No. 341,380, but, also, to the application for patent No. 632,527, which was filed between the time the application for patent No. 388,366 was filed and the time of its issuance. These topics, however, will not prove of consequence.

Patent No. 388,366 contains five claims, of which the only ones we need notice are as follows:

"1. In a machine for stamping or marking mail-matter, the combination, with the supporting-feed bed, of a stamp normally out of the path of move-

ment of the mail-matter, and a stamp tripper or releaser normally in said path.

"2. In a machine for marking mail-matter, the combination of an oscillating frame carrying a marking-roller, and a lever provided with a catch for engaging the oscillating frame and extending into the path of the moving mail-matter."

The specification of the third patent states that it relates to machines for automatic stamp-canceling, and that such machines had not been successful in practical operation for lack of proper registration. The specification is very long, covering many details to which apparently the patent relates; and there are 69 claims. We need repeat only claim 4:

"4. In a mail-marking machine for automatically marking mail-matter, the combination with a feed member and a marking member having a die; of means for controlling the registration of the die upon the mail-matter."

The underlying feature of all these three patents is that, in some manner, the series of mechanical events which results in stamping the letter is set in motion by contact with the letter itself. It seems to be admitted that the patent which first issued, No. 341,380, was the first in the art in which this important feaure was developed. Notwithstanding all that is said to the contrary, we cannot deny that, looking at this feature broadly, it is an essential element in the respondent's machine. If, therefore, we had to deal with any patent belonging to the complainant in which the claims covered this broad feature, we might be compelled to doubt the conclusion reached by the Circuit Court; but, as the case stands, and as we are not dealing with the first patent to Laass and Hey, we must affirm it.

The record here is very voluminous, containing over 3,000 pages. The opinion of the learned judge of the Circuit Court was evidently elaborated with great care. It fully explains all the facts necessary for an understanding of the case as it appears before us. The questions involved are such that, probably, no future case will present the same conditions, so that it would be of no benefit to either the bench or the profession to extend this opinion by restating generally what has been already fully set out.

The complainant contends that the first claim of the second patent, No. 388,366, is so broad that it covers "every kind of a stamp normally out of the path of the moving mail-matter, and every kind of a tripper or releaser for the stamp normally in said path." It necessarily rests its case on this proposition. The opinion of the learned judge of the Circuit Court has met this fully in detail, and we need not go so much into it as he has done. It is enough for us to say that the first patent to Laass and Hey, which, as we have said, is not now in issue, exhibited one method by which stamping a letter is accomplished by a stamp "normally out of the path of movement of the mail-matter," made effective by the result of a contact between the letter and something normally in its path; so that what appears in patent No. 388,366, if invention at all, is simply for an improvement on what was described by the earlier one.

Claim 1 of patent No. 388,366 substituted as a connecting link between the letter and the stamp or die a series of mechanical devices in lieu of an electric current shown in patent No. 341,380. In the

state of the art as it now exists, and as it existed when these patents were applied for, the making of such a substitution was prima facie within the rules as to equivalents. If the respondent is correct in stating its position, the direction of activity was reversed between the machines of the earlier and the later patents; but this, also, in the state of the art, was prima facie within the rules as to equivalents. There are no other differences. Therefore it is clear that claim 1 of the second patent must have been purely for improvements in details, as stated in what we have quoted from the specification; and, as the learned judge of the Circuit Court has well said, in substance, claim 2 of the second patent is more clearly subject to the same observation. The details in the respondent's machine vary from patent No. 388,366 at least as widely as No. 388,366 varies from the one which preceded it. This, also, was the substantial conclusion of the Circuit Court of Appeals for the Second Circuit in Groth v. International Postal Supply Co., 61 Fed. 284, 288, 9 C. C. A. 507; so that, not only because our own investigations lead to the same result as that reached by the Circuit Court, but to one in harmony with an earlier decision of the Circuit Court of Appeals for another circuit, we hold that the appeal, so far as patent No. 388,366 is concerned, cannot avail.

Coming to patent No. 632,527, which we have said relates so far as we are concerned, to registration, the learned judge of the Circuit Court observed, in effect, that it was impossible that the respondent's device assimilated with the complainant's, because in the complainant's machine we start with a die normally at rest, while in the respondent's we start with a die which is always rotating. Therefore the problem of the complainant's machine must be solved by controlling the die, while that of the respondent's must be solved by controlling the feed. We may also add that, in the state of the art, registration is a matter of such universal use and application that mechanism providing therefor is usually matter of detail. As with guides, moulding tools, and other implements of universal use, every mechanic enjoys the public right to organize methods of registration to meet the peculiarities of his own mechanism. Bates v. Keith (C. C.) 82 Fed. 100, 103; Id., 84 Fed. 1014, 28 C. C. A. 638. Consequently, as we approve the distinctions made by the learned judge of the Circuit Court, we must accept his conclusion as correct; and thus the appeal is entirely disposed of.

The judgment of the Circuit Court is affirmed, and the appellee recovers its costs of appeal.