### AQUARAMA CO. v. OLD MILL CO. et al.

#### (Circuit Court, E. D. New York. May 27, 1903.)

**1. PATENTS—EXPIRATION WITH FOREIGN PATENT—IDENTITY OF INVENTION.**
> The Pickard patent, No. 448,072, for construction of pleasure canals or waterways, shows a canal which, while the same in principle, is not identical in structure with that shown in the prior British patent of 1888, No. 10,519, to the same inventor, but contains the additional feature that the longitudinal partition through the center is extended to the ends, dividing the canal throughout its entire length, while in the British patent an opening is left at each end, through which the water flows and the boats pass. Hence, as to such feature, which is an improvement of great value and utility, showing patentable invention, the United States patent did not expire with the British patent.

In Equity. Suit for infringement of letters patent No. 448,072 for construction of canals, granted to Arthur Pickard March 10, 1891. On motion to vacate temporary injunction.

Kenyon & Kenyon (William Houston Kenyon, of counsel), for complainant.

Edward Hymes, for defendants.

THOMAS, District Judge. Pending the final hearing an order enjoining the defendants from using the complainant's patented device has been granted. The present motion has no relation whatever either to the facts, law, or equities involved upon the hearing and granting of such order. The immediate inquiry is whether the patent has expired by reason of its dependence upon the British patent, which itself expired by limitation of time on July 20, 1902. The British patent was granted on July 20, 1888, and the United States patent on March 10, 1891, upon an application filed June 4, 1889. If the United States patent is identical with the British patent, it expired with the latter. The inventor, Arthur Pickard, obviously regarded the two patents as coincident in their general scope. In his application for the United States patent he describes himself as a subject of the Queen of Great Britain and Ireland, residing at Leeds, county of York, England, and in the specification he declares that he has "invented new and useful improvements in the construction of canals, for which patent has been granted me in Great Britain, dated 20th July, 1888 (No. 10,519), of which the following is a full and clear description." In the affirmation to the American application he states that "he verily believes himself to

¶ 1. See Patents, vol. 38, Cent. Dig. § 188½.

be the original and first inventor of improvements in the construction of canals described and claimed in the foregoing specification; that the same has not been patented to him or to others, with his knowledge or consent, except in the following countries, Great Britain and Ireland, dated 20th July 1888, No. 10,519." At the head of the specification is the following:

"Arthur Pickard, of Leeds, England.

"Construction of Canals.

"Specification forming part of Letters Patent No. 448,072, dated March 10, 1891.

"Application filed June 4, 1889. Renewed February 11, 1891.

"Serial No. 381,028. (No model.) Patented in England July 20, 1888, No. 10,519."

The United States patent states:

"The object of my invention is to construct canals or water courses of a direct or circuitous description, and to provide means for imparting a current to the water for moving boats or other vehicles."

The British patent states:

"The object of my invention is to construct canals so as to produce a stream in both directions, either artificially or otherwise, whereby boats of ordinary description can be made to move in either direction without the aid of horses or locomotives on the banks of such canal, or without the employment of steam engines on the vessel."

Four figures are shown in the United States patent and three in the British patent. In each specification it is stated that "Fig. 1 shows a plan looking at the top of canal." The United States specification states as follows:

"In the drawings I have shown a canal or water course which is either straight, as shown at A, divided longitudinally by a wall partition or mid-feather, B, or continued, as shown at c, to any required distance in a circuitous or ornamental meandering form. In order to create a current in either direction or throughout the length of such canal or water course, I employ a propeller, D, paddle wheel, pump, or other mechanical means, whereby the water is drawn from one side, E, to the other side, F, and passed round in a current throughout the whole length of the canal, as shown by arrows, the same water being passed round or made to travel in a current as often as required. The movement of the current may be reversed at pleasure by reversing the motion of the propeller, D, or other motor. The boat or other vehicle is placed in the water, say at G. The current then being produced, it floats along with the stream until it arrives at H. It is then conducted through lock, J, and round again to the starting point, G. Other means may, when preferred, be employed for transferring the boats or other vehicles from one side, H, to the other side, G. The rotary movement is imparted to the propeller, D, or other motor from any convenient source."

The British patent contains the following description:

"A represents the canal between locks B and C. In canals of ordinary construction the water is generally level so that no perceptible current takes place. Now, in my improvements, in order to produce currents in both directions, I divide the canal longitudinally into two equal parts by means of a wall, partition, or mid-feather, D, constructed down or along the center to a suitable distance from the locks at each end as shown, and, in order to produce the required current, I provide any required number of paddle wheels, E, at one or both ends, or any suitable position in the length of the wall or mid-feather, D. These paddle wheels, E, may be caused to revolve by being connected through suitable shafting, F, and gearing, H, to some suitable motor.

By this arrangement of paddle wheels the stream is caused to flow in two directions, as shown by arrows, and by such stream the boats are moved in such directions and separated from each other by the mid-feather or wall, D, as shown in Fig. 2. On the wall or mid-feather, D, guide rails, J, may be provided into which runners, K, attached to the boats may be passed, and by this arrangement the necessity of steering is avoided. Instead of producing the stream of water artificially as above described when the supply of water is large from natural sources, the mid-feather or wall, D, may be continued up to the lock gates at one end, so that the connection at that end is stopped, and, the stream of water being let in at one side of the wall or mid-feather, D, passes along that side and round the other or open end, and continues its course down the opposite side discharging itself through a sluice or other opening at the other side of the mid-feather or wall, but at the same end as the water had previously been admitted."

Fig. 3 of the United States patent is identical with Fig. 2 of the British patent, and Fig. 4 of the United States patent is similar to Fig. 3 thereof, except that it shows a transverse section through one leg of the canal. Fig. 2 of the United States patent shows a propeller whereby the water is drawn from one side of the canal to the other for the purpose of creating the current. Fig. 3 of the British patent shows paddle wheels used to produce the current. The United States patent, Fig. 2, shows the propeller wheel reaching nearer the bottom of the canal, and thereby made more efficient, but there is no reference to this in the specification. It also shows a housing of the propeller. It is alleged that the paddle wheels shown in the British patent would be inefficient on account of their slight submergence, and the absence of such housing. That is a mere matter of degree. The general plan is precisely the same. In one case the adaptation is better than in the other. Although there is some change in the language, the United States specification shows no enlargement of conception. This statement should be modified in this regard: that Fig. 1 of the British patent shows the canal open at both ends. Fig. 1 of the United States patent shows the canal continuous at one end and closed at the other. All other distinctions attempted to be pointed out by the complainant appear strained, and without foundation. The general scheme is the same in each patent, and the practical illustration, except in degree and efficiency of appliances, is the same in each, save in the one regard that in the United States patent the canal is throughout its whole length, "divided longitudinally by a wall partition or mid-feather, B, or continued, as shown at c, to any required distance in a circuitous or ornamental meandering form." That is, to the extent that the canal is direct, it is divided longitudinally by the partition, and so far as it is extended in a circuitous form the space intervening between the two branches takes the place of, and becomes, the partition or mid-feather. The diagram Fig. 1 shows this, and, in addition to the words above quoted from the specification, illustrating that the canal is to be divided through its whole length, there are directions for conducting the boat after it has made its circuit through one lock, J, and around the mid-wall to and through the other lock, J, for the purpose of bringing it again into its first position. If the wall did not intervene and close the entire space to the lock, this would be unnecessary. Moreover, the third and fourth claims explicitly provide for such arrangement, and are as follows:

"(3) A continuous canal or water course divided longitudinally by a wall partition or mid-feather, and provided with a propeller wheel for forcing the water from one side of said canal into the other side, whereby a continuous current is established, substantially as set forth.

"(4) A continuous canal or water course divided longitudinally by a wall partition or mid-feather, and provided with a propeller wheel for forcing the water from one side of said canal into the other side, whereby a continuous current is established, and lock, J, for transferring boats from one side of the canal to the other, as set forth."

It is not a partial longitudinal wall, but one occupying the entire length of the canal. In the British patent it is painstakingly shown that there is an opening at each end of the partition wall, so that the current may pass from one side to the other uninterruptedly, and the specification states that:

"By this arrangement of paddle wheels the stream is caused to flow in two directions as shown by arrows, and by such stream the boats are moved in such directions and separated from each other by the mid-feather or wall, D, as shown in Fig. 2."

Here is a fair statement that the arrows illustrate the course of the stream around the ends of the mid-feather, and that the boats follow the stream; hence the arrows illustrate the course of the boats. But, aside from this, in exact terms the inventor in the British patent states that the partition is constructed "to a suitable distance from the locks at each end as shown." Moreover, he says:

"Instead of producing the stream of water artificially, as above described, when the supply of water is large from natural sources, the mid-feather or wall, D, may be continued up to the lock gates at one end so that the connection at that end is stopped, and the stream of water, being let in at one side of the wall or mid-feather, D, passes along that side and round the other or open end, and continues its course down the opposite side, discharging itself through a sluice or other opening at the other side of the mid-feather or wall at the same end as the water had previously been admitted."

Thus the inventor's conception was that, if the water were to be supplied from natural sources, the mid-wall should be continued to the lock on one side, "so that the connection at that end is stopped," whereupon the water is carried around the other end of the mid-wall, and brought back, and allowed to escape through a sluice at the end from which it started. But this arrangement was not to exist where provision was made for propelling or pumping water from one side of the mid-wall to its other side. Where the water was let in from natural sources, the intention was to close the gap, send the water around one side, and send it out the other side; and the gap was closed so that it would be so discharged, and not go around the near end of the mid-wall. Where the water in the canal was to be pumped or propelled from one side to the other, the evident intention in the British patent was to leave the space open. In the United States patent the obvious purpose was to close the space. Everything shows that the space was to be kept open in the British patent and to be closed in the United States patent. The broad conception of the canal was the same in both, but the devices for making it operative were more effectual in the United States than in the British patent, and the provision for closing the gap is a distinguishing feature of the United States patent. It is quite improbable that the arrangement in the

British patent for carrying the water from one side of the mid-wall to the other would be operative. That the United States patent is operative is undoubted. Therefore, while broadly the British and the United States patents are the same, the provision in the United States patent for closing the gap between the end of the wall and the lock is new, and is specifically provided for in claims 3 and 4. It is novel, unless it may be said to have been anticipated by the provision in the British patent for closing the space "when the supply of water is large from natural sources." But the fact that the inventor did not conceive of closing it, where he propelled or pumped the water from one side of the canal to the other, and obviously did not intend to do so, leads to the conclusion that this improvement had not then occurred to him, and that he did not perceive its necessity or utility until after the British letters were issued. The new conception is so valuable, and apparently so indispensable to the proper operation of the canal, that it must be concluded that it shows patentable invention. Hence the defendants cannot be permitted to operate a canal which can be closed in such a way as to come within the terms of claims 2 or 3. In other words, the defendants cannot close the gap between the end of the mid-wall and locks, as above discussed, and as shown in the British patent.

The motion to vacate the injunction is denied as regards the use of a canal whose mid-wall is extended to the lock.