## SIEMENS'S ADMINISTRATOR *v.* SELLERS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

Argued October 17, 1887. — Decided November 14, 1887.

The English letters-patent dated January 22, 1861, and sealed July 19, 1861, issued to Charles William Siemens and Frederick Siemens for "improvements in furnaces," and the American letters-patent No. 41,788, dated March 1, 1864, issued to C. W. and F. Siemens for "improved regenerator furnaces" describe the same furnace, in all essential particulars, and are substantially for the same invention.

When American letters-patent are issued covering the same invention described in foreign letters-patent of an earlier date, the life of the American patent is not prolonged by the fact that it also covers improvements upon the invention as patented in the foreign country.

The condition imposed by the act of July 4, 1836, 5 Stat. 117, that the term of a patent for an invention which has been patented in a foreign country shall commence to run from the time of publication of the foreign patent, was not repealed or abrogated by the act of March 2, 1861, 12 Stat. 246.

In the construction of a statute, although the words of the act are generally to have a controlling effect, yet the interpretation of those words must often be sought from the surrounding circumstances and previous history.

ty for an account, and for an injunction to restrain ement of letters-patent. Decree dismissing the bill from which the complainants appealed. After the cause was docketed in this court, one of the appellants died, and his administrator with the will annexed appeared and prosecuted his appeal. The following is the case as stated by the court.

This is a suit on a patent granted to the appellants, Charles

W. and Frederick Siemens of Great Britain on the 12th day of January, 1869, being a reissue of a patent originally granted to the appellants on the 1st day of March, 1864. This patent was for an improved regenerator furnace, so called, intended to be used where a high degree of heat is required. By the arrangements of this invention, the products of combustion, after passing through the furnace, and before entering the chimney, are utilized in heating what are called the regenerators, consisting of bricks, or other refractory materials, loosely piled up in two pair of separate chambers through which, alternately, after being thus heated, the air and the gases are made to pass on their way to the furnace, and thus become raised to an intense degree of heat before entering it. Whilst one pair of regenerators are being thus heated by the outgoing products of combustion, or flame, the other pair are giving out their heat to the air and gases which are passing into the furnace; and then, by a reversal of dampers, the current is changed, and the air and gases are made to pass through the newly heated regenerators, and the products of combustion, or flame, through those that have become partially cooled; and so on alternately.

The apparatus has various incidental appliances necessary to its successful operation. Thus, as the regenerator chambers are placed underneath the furnace, spaces are formed between them and the furnace bottom, for the purpose of admitting a circulation of air to cool the parts and prevent their being destroyed by the intense heat. Another arrangement is that of a separate and distinct furnace, of peculiar form, for the consumption of the raw fuel, so constructed and operated that the gases produced thereby are carried over by a suitable flue to one of the heated regenerators, whilst atmospheric air is admitted into the other regenerator of the same pair. The air and gases are thus kept separate until about to enter the furnace by separate flues, when they meet and commingle and produce a rapid combustion and a most intense heat.

This is the general nature of the invention, and this explanation will be sufficient for understanding the claims of the patent, which are four in number, and are as follows, to wit:

" We claim, in combination with a furnace A, and its chimney or smoke-discharge flue P, a system or series of air and gas regenerators $B^1$ $B^2$ $B^3$ $B^4$, constructed substantially as specified, and having conduits and dampers arranged so that air and gas may be led into and through such regenerators and furnace and out of the chimney, in manner and so as to be operated as and for the purpose or purposes hereinbefore described.

" We also claim the arrangement and combination of the air space or open chamber C with the furnace and its system of regenerators, arranged and applied together substantially in manner and so as to operate as described. [The air space here referred to is that by which the hearth of the furnace and other parts are cooled and prevented from destruction by the intense heat.]

" We also claim the arrangement and combination of the air chamber or space D, or the same and the space E, with the furnace, regenerators, conduits, and damper chests applied thereto, the whole being substantially as specified. [The air chamber D admits the atmospheric air to the regenerator.]

" We also claim the combination of a furnace with one or more regenerators or means of receiving its waste smoke and gaseous products, and intercepting or receiving heat therefrom, and also with means or devices by which all or a portion of the heat so intercepted or received may be absorbed by the influent air or gas during its passage into or to such furnace, for the purpose of improving or promoting combustion therein."

The defendants do not deny that the appellants were the authors of the very ingenious invention claimed by the patent; and they do not seriously deny that they use it. The principal defence which they set up is, that the appellants took out an English patent for the same invention, dated January 22, 1861, and sealed July 19, 1861; and that, by force of the acts of 1839 and 1861, the American patent expired at the end of seventeen years from the sealing of the English patent, namely, on the 19th day of July, 1878; and they deny that they used the said invention before the last-mentioned date, and no evidence is given that they did do so.

*Mr. Charles S. Whitman* for appellants.

I. The invention claimed in the complainants' reissued letters-patent was not "patented in a foreign country more than six months prior to the application," because : (1) It is not claimed in the English Letters-Patent, No. 167, of 1861. [Mr. Whitman compared the two specifications at length in support of this contention.] (2) It is not described in the said English patent in such full, clear, and exact terms as to enable any person skilled in the art or science to which it appertains to make, construct, and practise the invention patented.

A person skilled in the art of building furnaces could not construct a furnace capable of use from the specification and drawing of English patent No. 167. The grant of the foreign patent raises no presumption that the description is sufficiently full and clear to enable this to be done. *Seymour* v. *Osborne*, 11 Wall. 516 ; *Hill* v. *Evans*, 6 Law Times N. S. 90 ; *Cohn* v. *United States Corset Co.*, 93 U. S. 366 ; *Cahill* v. *Brown*, 15 Off. Gaz. 697.

The defendant, upon whom the burden of proof rests, has introduced no testimony on that point. Novelty can only be negatived by proof which puts the fact beyond reasonable doubt. *Coffin* v. *Ogden*, 18 Wall. 120 ; *Parham* v. *Machine Co.*, 4 Fish. 468, 482 ; *Shuley* v. *Sanderson*, 8 Fed. Rep. 905 ; *Green* v. *French*, 11 Fed. Rep. 591 ; *Wood* v. *Mill Co.*, 4 Fish. 561 ; *Hawes* v. *Antisdel*, 2 B. & A. 10 ; *Bignall* v. *Harvey*, 5 B. & A. 636.

The commissioner having granted the extension for seventeen years from its date, it will be presumed that he acted within the law. *Corning* v. *Burden*, 15 How. 271 ; *Wilder* v. *McCormick*, 2 Blatchford, 31 ; *Alden* v. *Dewey*, 1 Story, 336 ; *Hotchkis* v. *Greenwood*, 4 McLean, 456 ; *S. C.* on appeal, 11 How. 248.

For, if it was his duty to limit the term, and he has not done so, the conclusion must be that the invention was not described or shown in the English patent. *Philadelphia & Trenton Railroad* v. *Stimpson*, 14 Pet. 448.

There are two sources to which we are entitled to resort in

construing the claims: (1) The state of the art prior to the patentee's invention; (2) the description in the specification. The state of the art prior to the joint invention of C. W. & F. Siemens is illustrated by the patent granted to Frederick Siemens in 1856. The scope of a joint invention and the claims of a patent founded thereon will be ascertained and limited in view of pre-existing devices, which were the sole invention of one of the joint patentees. *Hopkins & Dickinson Manufacturing Co.* v. *Corbin*, 14 Blatchford, 396. It is not, of course, contended that the English patent of Frederick Siemens, above referred to, describes or shows an invention which may be reduced to practice, but it is submitted that it should be considered in construing the claims of the reissue. Letters-patent may be construed in the light of the cotemporaneous construction of the inventor. *Trader* v. *Messmore*, 1 B. & A. 639. The application of this rule will establish that the theories of the defendants' experts regarding the scope of English patent 167, and also of the reissue, are erroneous, and that they have entirely misunderstood the invention disclosed by these patents. It will be obvious, from a perusal of their testimony, that what they consider the primary and essential features of the Messrs. Siemens's joint invention is the sole invention of Mr. Frederick Siemens, and is claimed by him as such in his English patent of 1856.

II. But if it be admitted that this claim is anticipated by the English patent of 1861, this would not invalidate the first three claims of the patent. We maintain that a patent granted in this country, subsequent to the act of 1861, and prior to the act of 1870, for a term of seventeen years from the date of issue for an invention which was also patented in a foreign country by the same person, "more than six months prior to his application," under the act of 1861, "remains in force for the term of seventeen years from the date of issue."

Under the act of 1861, the patent upon which this suit is brought, runs, according to its tenor, and "remains in force, for the term of seventeen years from March 1, 1864," even if it is proved that the whole or any part of the invention claimed in said patent was patented in England "more than six months

prior" to the application in this country; because the proviso of the act of 1839, "that in all such cases every such patent shall be limited to the term of fourteen years from the date of publication of such foreign patent," was repealed by the act of 1861, which provides that "*all* patents hereafter granted shall remain in force for the term of seventeen years from the date of issue," and repeals "all acts or parts of acts heretofore passed which are inconsistent with the provisions of this act."

If violence is to be done to the usage of the English language in giving words a meaning which they never were supposed to have before, and construing the 16th section of the act of 1861 to say one thing and mean another, such a departure from the literal meaning of the words used in the statute can only be excused on the ground that it is permissible to ascertain the source of the intention of the legislature by a consideration of other acts in *pari materia*, the mischiefs of which were the cause of the passage of the act of 1861. Let us first consider the acts in *pari materia*, which were not in force at the date of the patent.

[Mr. Whitman then examined the statutes from 1790 to 1870, and continued:]

It is obvious that the act of 1861 introduced two new features: First. It abolished extensions, except by special act of Congress. Second. It established a fixed and certain term of seventeen years for all patents in lieu of a term depending upon the discretion of the Commissioner of Patents.

That the object of the law was to abolish extensions appears upon its face, and also from the action of Congress. In exchange for the right of applying for a seven years' extension it gave to the inventor an absolute and certain term of seventeen years, and as aliens and persons who had patented their inventions abroad more than six months prior to taking out a patent in this country, possessed the right of applying for a seven years' extension, and as extensions were frequently granted to such persons, it is obvious that they were also entitled to this absolute term of seventeen years. The statute abolished the power of the commissioner to limit the term of

the patent, which, as we have seen, he possessed under the act of 1836, in order to render it certain that in all cases the patentee should enjoy the full term of seventeen years given in lieu of the privilege of obtaining an extension.

The section under consideration provides that "all patents hereafter granted shall remain in force for the term of seventeen years *from the date of issue.*" What is the meaning of the word "issue"? Webster defines it as the act of sending out or causing to go forth, delivery, the issue of an order from a commanding officer or a court, the issue of money from the treasury. Obviously it is used in this sense in the patent laws. In reading the section of the act of 1861, under consideration, it strikes one forcibly that there is really nothing to construe. The object of the law was to abolish extensions, which, owing to the bad methods at the Patent Office, had become unpopular, and to grant in lieu thereof a longer term to persons who, under the former legislation, would have been entitled to apply for an extension, including, of course, inventors who had first patented their inventions abroad. This is universally admitted. The object and policy of the law being known, and its language perfectly plain and unambiguous, it would seem that there can be no construction where there is nothing to construe. For the court to say that § 16 of the act of 1861 applies only to a particular class of patents, would be the exercise of legislative power which the court does not possess; it would change the terms and language of the section, and would, in fact, make it another enactment.

*Mr. S. S. Hollingsworth* and *Mr. Joseph C. Fraley* for appellees.

MR. JUSTICE BRADLEY, after stating the case as reported above, delivered the opinion of the court.

The questions to be decided, therefore, are whether the English patent (which was given in evidence) was for the same invention as the American patent; and, if so, whether the latter is limited to expire at the end of seventeen years

from the sealing of the former. We think that both of these questions must be answered in the affirmative.

As to the first question, we have carefully compared the two patents, the English and American, and can see no essential difference between them. They describe the same furnace in all essential particulars. The English specification is more detailed, and the drawings are more minute and full; but the same thing is described in both. There is only one claim in the English patent, it is true. But that claim, under the English patent system, entitled the patentees to their entire invention, and is at least as broad and comprehensive as all four claims in the American patent. It is in these terms:

" Having now described the nature of our invention and the best modes we are acquainted with of performing the same, we wish it to be understood that we do not confine ourselves to the precise details shown on the accompanying drawings; but we claim as our invention the various arrangements of regenerative furnaces worked by the gases resulting from an imperfect combustion of solid fuel in separate places, as hereinbefore set forth."

It is contended by the counsel of the complainants, that the American patent contains improvements which are not exhibited in the English patent. But if this were so, it would not help the complainants. The principal invention is in both; and if the American patent contains additional improvements, this fact cannot save the patent from the operation of the law which is invoked, if it is subject to that law at all. A patent cannot be exempted from the operation of the law by adding some new improvements to the invention; and cannot be construed as running partly from one date and partly from another. This would be productive of endless confusion.

We have, then, to examine the question whether the term of the American patent was limited to run from its own date, or from the date (or sealing — which is equivalent to the publication) of the English patent. The reissued patent sued on is dated January 12, 1869, but the original patent, which is

the one to be looked at, was dated March 1, 1864. It was issued, therefore, before the act of July 8, 1870, 16 Stat. 198, c. 230, by which the patent laws were revised, and whilst the acts of July 4, 1836, 5 Stat. 117; March 3, 1839, 3 Stat. 353; and March 2, 1861, 12 Stat. 246, were in force. The act of 1836, as well as previous acts, made the term of a patent fourteen years; but it authorized an extension of the term for seven years longer, if it should appear that the patentee, without neglect or fault on his part, failed to obtain a reasonable remuneration for his invention. By the same act (§ 7) if an invention for which a patent was sought had been patented in a foreign country, before the application for a patent here, it was a bar to obtaining a patent in this country, unless (§ 8) such foreign letters-patent had been taken out by the applicant himself within six months previous to the filing of his specification and drawings. The act of 1839, § 6, removed the limitation of six months, and allowed a patent to be taken out here at any time after the inventor had taken out a patent for the same invention in a foreign country, provided it should not have been introduced into public and common use in the United States prior to the application for a patent here: "*And provided also*, that in all cases every such patent shall be limited to the term of fourteen years from the date or publication of such foreign letters-patent."

The act of 1861 introduced several changes in the administration of the Patent Office, and gave a right to patents for designs. The last section (§ 16) declared as follows, to wit, " that all patents hereafter granted shall remain in force for the term of seventeen years from the date of issue; and all extension of such patents is hereby prohibited."

The act of 1870, which was a revision of all previous laws relating to patents, continued the period of seventeen years as the term of a patent, and in case a foreign patent had been previously issued, declared that the American patent should expire at the same time with the foreign patent, or, if more than one, at the same time with the one having the shortest term; but, in no case, for a longer term than seventeen years. This provision is substantially carried forward into the Revised Statutes, § 4887.

The appellants contend that the act of 1861 repealed that portion of the act of 1839 which declared that a patent should be limited to the term of fourteen years from the date or publication of prior foreign letters-patent for the same invention. So far as the period of fourteen years is concerned, this is, undoubtedly, true. Prior to 1861 all patents, as we have seen, were granted for the term of fourteen years, with a right, under certain circumstances, to an extension for seven years longer. This right of extension was attended with many inconveniences and much . expense to meritorious patentees, and Congress, by the act of 1861, cut it off, and made the term of all patents seventeen years — a compromise between fourteen and twenty-one years. The act had nothing to do with the question of foreign patents, but only with the term for which patents should ordinarily run; and the period of seventeen years, without any privilege of extension, was adopted in lieu of fourteen years with a provisional right of extension. That was the sole point before the legislative mind. Seventeen years limit was substituted for fourteen years. That was all that was intended or thought of. We are of opinion, therefore, that the condition imposed by the act of 1839, that the term of a patent for an invention which has been patented in a foreign country, shall commence to run from the time of publication of the foreign patent, was not repealed or abrogated by the act of 1861. If it was, it follows that there was a period of nine years, from 1861 to 1870, in which our patent system presented the anomaly of allowing patents to be taken out in this country at any length of time after the invention had been patented abroad, and without being subject to any condition, limitation, or restriction. This can hardly be supposed to have been the intention of Congress.

No doubt, the words of a law are generally to have a controlling effect upon its construction; but the interpretation of those words is often to be sought from the surrounding circumstances and preceding history. From the history of the law in this case, as exhibited in previous enactments, and from the evident object and purpose of § 16 of the act of 1861,

we are satisfied that the words there used to define and limit the term during which patents thereafter granted should remain in force, namely, "seventeen years from the date of issue," were only intended to change the length of the term, and not the point of its commencement. The latter continued as before, at "the date of issue," as defined by previous laws — referring either to the issue of the American patent itself, when no foreign patent had been previously obtained, or to that of the latter when such a patent had been obtained. This view of the construction and meaning of the act of 1861 was fully explained and enforced by Mr. Justice Blatchford in the case of *De Florez* v. *Raynolds*, 17 Blatchford, 436; *S. C.* 8 Fed. Rep. 434.

*The decree of the Circuit Court is affirmed.*