SAWYER SPINDLE CO. OF MAINE v. CARPENTER.

(Circuit Court, D. Rhode Island.   November 1, 1904.)

No. 2,638.

1. PATENTS—TERM—EXPIRATION OF PRIOR FOREIGN PATENT.
    The amendment of Rev. St. § 4887, by Act March 3, 1903, c. 1019, 32
    Stat. 1225 [U. S. Comp. St. Supp. 1903, p. 405], is not retroactive, and did
    not revive a patent which had previously expired under the section as
    it stood before amendment, by reason of the expiration of a prior foreign
    patent for the same invention.

2. SAME—IDENTITY OF INVENTION—DIFFERENCE IN BREADTH OF CLAIMS.
    A foreign patent and a subsequent American patent are not for different
    inventions because the latter contains a more generic claim, which
    covers the specific form of device described in the former, and other forms
    as well; and on the expiration of the foreign patent the specific invention
    claimed therein cannot be held to infringe the broader claim of the
    American patent, which to that extent, at least, expired with the foreign
    patent, by virtue of Rev. St. § 4887, where the patents were granted before
    the amendment of such section by Act March 3, 1897, c. 391, § 3, 29 Stat.
    692 [U. S. Comp. St. 1901, p. 3382].

3. SAME—AUTHORITY FROM INVENTOR TO OBTAIN FOREIGN PATENT—EVIDENCE.
    To bring a patent within the provision of Rev. St. § 4887, that "every
    patent granted for an invention which has been previously patented in a
    foreign country shall be so limited as to expire at the same time with
    the foreign patent," the party alleging such expiration has the burden
    of proving that the foreign patent was obtained by the American patentee
    or with his consent.   Quære, whether evidence that it was obtained by
    another, to whom the American patentee communicated the invention, as
    shown by the application for his foreign patent, is sufficient to show prima
    facie that such person was authorized to procure a patent.

In Equity.   Suit for infringement of letters patent No. 363,425, for
a spindle support for spinning machines, granted to Albert R. Sher-
man May 24, 1887.

Richardson, Herrick & Neave, A. K. Richardson, and J. L. Stackpole,
for complainant.

Causten Browne and James M. Morton, Jr., for defendant.

BROWN, District Judge.   Letters patent No. 363,425, for a spindle
support for spinning machines, issued May 24, 1887, on the application
of Albert R. Sherman, filed July 3, 1882.   The defendant contends
that this patent expired in 1897, through a limitation of its term by a
British patent to Alexander Melville Clark, dated May 19, 1883 (No.
2,510), for an invention "communicated to him from abroad by Albert
Read Sherman."   To meet this ground of defense, the complainant
contends that the act of Congress of March 3, 1903, c. 1019, 32 Stat.
1225, 1226 [U. S. Comp. St. Supp. 1903, pp. 405, 406], prevents the
expiration of the patent in suit, even if it is for the same invention pat-
ented by the British patent to Clark.   It is argued that this is a remedial
statute, and that, from its date, no matter what evidence may be
brought before the court as to the patentee's having procured a foreign
patent, the court shall not declare any patent invalid on account of a
foreign patent unless the application for the United States patent was
more than twelve months later than the application for the foreign pat-

ent; that the Sherman patent in suit was applied for before the British patent, and therefore cannot be limited thereby. To declare a patent invalid, and to declare that a patent was only for a term of less than seventeen years, are, however, two different things.

Section 4887, Rev. St., before the amendments of 1897 and 1903, read as follows:

"No person shall be debarred from receiving a patent for his invention or discovery, nor shall any patent be declared invalid, by reason of its having been first patented or caused to be patented in a foreign country, unless the same has been introduced into public use in the United States for more than two years prior to the application. But every patent granted for an invention which has been previously patented in a foreign country shall be so limited as to expire at the same time with the foreign patent, or, if there be more than one, at the same time with the one having the shortest term, and in no case shall it be in force more than seventeen years."

Clearly the phrase "nor shall any patent be declared invalid" did not, in this statute, include a declaration or judgment of a limitation of the term of a patent. In the Telephone Cases, 126 U. S. 572, 8 Sup. Ct. 802, 31 L. Ed. 863, it was said:

"In our opinion, it has been settled by the decision of this court in O'Reilly v. Morse, 15 How. 62, 112, 14 L. Ed. 601, and impliedly by that in Siemens v. Sellers, 123 U. S. 276, 8 Sup. Ct. 117, 31 L. Ed. 153, * * * that the effect of section 4887 of the Revised Statutes is not to render invalid an American patent which does not bear the same date as a foreign patent for the same invention, but only to limit its term."

In Bate Refrigerating Co. v. Sulzberger, 157 U. S. 1, 43, 15 Sup. Ct. 508, 519, 39 L. Ed. 601, it was said:

"If he obtains foreign patents for his invention before obtaining one here, the American patent is limited by law, whether it is so expressed or not in the patent itself, to expire with the foreign patent having the shortest term."

The defendant makes no contention that the patent in suit was invalid, but contends that, by reason of the existence of the British patent, the term of the American patent was limited, under the law. The phrase "nor shall any patent be declared invalid" was not enlarged in meaning by the act of March 3, 1897, c. 391, § 3, 29 Stat. 692 [U. S. Comp. St. 1901, p. 3382]. Section 8 of the amendatory act [U. S. Comp. St. 1901, p. 3385] provided, also, that the section as amended should not apply to a patent granted prior to January 1, 1898, etc. Therefore it appears that, under the law as it existed at the date of the application for the patent in suit, and at the date of the expiration of the British patent, the patent in suit was for a term less than seventeen years. Assuming that the British patent was for the same invention, and was procured by authority of Sherman, it had run its term and expired in 1897. Do we find in the amendatory legislation any intention to revive patents that had previously expired by limitation? Certainly not in the amendment of 1897, but, on the contrary, an express intention to the contrary.

It is argued, in effect, that we may find in the act of 1903 an intention of Congress to revive a patent which had been legally dead for about six years. The question of the constitutional power of Congress to enact retroactive statutes concerning patents has been argued, but is immaterial. Statutes are construed to operate prospectively only,

unless the contrary intention is manifest beyond a reasonable doubt. City of Shreveport v. Cole, 129 U. S. 36, 43, 9 Sup. Ct. 210, 32 L. Ed. 589. The amendments of March 3, 1903, so far as I can see, contain no indication of an intention to revive expired patents, or to give to the phrase "nor shall any patent be declared invalid" a meaning broader than before. The act of 1903, in my opinion, does not forbid the limitation of the patent in suit by the term of the British patent to Clark.

. The defendant contends also that the invention of claim 5 of the patent in suit was not patented by the British patent. It is conceded that the first four claims of the patent in suit and of the British patent are substantially identical, and that the inventions covered thereby are the same. The defendant argues that, though the patent in suit may have expired as to four of its claims, it may still exist as a valid patent for the invention of the fifth claim; citing Aquarama Co. v. Old Mill Co. (C. C.) 124 Fed. 229. I do not find, however, in the opinion in that case, any reference to Siemens v. Sellers, 123 U. S. 276, 8 Sup. Ct. 117, 31 L. Ed. 153, where a similar contention was made (page 280, 123 U. S., page 117, 8 Sup. Ct., 31 L. Ed. 153). The court said (page 283, 123 U. S., page 119, 8 Sup. Ct., 31 L. Ed. 153):

"A patent cannot be exempted from the operation of the law by adding some new improvements to the invention, and cannot be construed as running partly from one date and partly from another. This would be productive of endless confusion."

But assuming, for the argument only, that a patent may be limited in term by a foreign patent as to some of its claims, and not as to others— that it may expire in part and survive in part—it would still seem impossible that a single claim should in part expire and in part survive. Where the difference between two claims is merely in breadth, the first being a specific claim for a particular embodiment of an invention, and the second being a generic claim which covers the specific form of the first claim, and other forms as well, it follows, upon the expiration of the species claim, that the specific invention claimed therein can no longer be held to infringe the patent, and that the generic claim has expired in part at least. Two patents and two claims may be regarded as for the same invention, though one claims only a special machine, and the other claims broadly a genus which includes the former. Otis Elevator Co. v. The Portland Co., 127 Fed. 557, 62 C. C. A. 339; Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121; Robinson on Patents, §§ 464, 465, vol. 2, p. 45. When this is the case, though the American claim may be broader than that of the prior British patent, it is still true that what is claimed under the generic claim has already been patented in a foreign country. I can see no reason why the rules which are applied to determine the question of double patenting when United States Patents are involved are not also applicable when the question is whether the invention has been first patented in a foreign country. What is the distinction between claim 5 of the patent in suit and claim 3 of the British patent? It is not denied that the invention of claim 3 of the British patent would infringe claim 5 of the American patent in suit. Complainant's brief says:

"A structure which would infringe Sherman's fifth claim in suit would not infringe the British patent. In other words, the invention patented in the fifth claim is not patented at all by the English patent."

This statement cannot be accepted. A structure which would infringe Sherman's fifth claim might or might not infringe claim 3 of the British patent, or claim 3 of the patent in suit. The distinction between the claims is merely one of breadth. The complainant's brief says:

"The fifth claim does not require, as do the other four claims, that the bolster should be 'fitted loosely within the bolster-case throughout its length.'"

This is pointed out as the vital distinction. It is said that the peripherally loose bearing was left out of the fifth claim "because his invention of the lock between bolster and bolster-tube could equally be embodied with any detached bolster whose foot could move with the spindle." In other words, it is essential only that the foot of the bolster move with the spindle. This, however, is essential to both claim 3 and claim 5. A bolster fitted loosely throughout its length has a looseness at the foot, and also a looseness at the band-pull. Irrespective of the latter feature, the invention of claim 3 embodies a bolster moving at its foot, and restrained from rotation by a pin connecting it with the bolster-case. The limiting words do not take out of claim 3 any of the essential elements of claim 5.

The case stands thus: Claim 5 covers claim 3, and more. The relation is that of inclusion. The particulars in which the structures of claim 3 and claim 5 are identical are looseness at the foot, with a connection to prevent rotation with the spindle. The difference is that in claim 3 is required also a looseness throughout the length, which is nonessential to the Sherman invention, as claimed in claim 5, if we construe that claim as broadly as the complainant desires. The structure of claim 3 is free, the patent having expired as to this. The defendant's structure has looseness of the bolster throughout the whole length. It would infringe both claim 5 and claim 3. It is distinguishable from the invention of claim 5 exactly as the structure of claim 3 is distinguishable. How can a structure which has the limitation of claim 3—the sole feature upon which claim 5 is distinguishable—be still covered by the generic claim 5? It is clear that a large part of the contents of the verbal expression "claim 5" has been patented in England under claim 3, and is free.

The only contention left for the complainant is that such part of the contents of this generic claim as has not been protected by the specific claim should still be protected by the patent. Disregarding the inconvenience of allowing a patent to expire in sections, part at one date and part at another, and the greater inconvenience of allowing a single claim to expire in part and to survive in part as a limited claim, and adopting this view, we should then arrive at the conclusion that the defendant's device was within only that part of the generic claim that had expired, and not within the part that had survived. Claim 5 and claim 3 are not, in my opinion, claims for separable subject-matter, and the invention of claim 5 has been previously patented by the British patent.

The remaining point in defense is that there is no sufficient proof that the British patent to Clark was taken out by the authority or with the consent of Sherman or his assignee. Construing section 4887 in

Hobbs v. Beach, 180 U. S. 383, 397, 21 Sup. Ct. 409, 415, 45 L. Ed. 586, and referring to the following clause, "Every patent granted for an invention which has been previously patented in a foreign country shall be so limited as to expire at the same time with the foreign patent," it was said, "But this obviously presupposes that the foreign patent shall have been obtained by the American patentee, or with his consent." Proof merely of prior patenting in a foreign country by a stranger is not sufficient to limit a United States patent. Where the foreign patent does not issue to the patentee of the American patent, evidence must be produced to show that the foreign patentee acted with the authority or consent of the American patentee; otherwise he who sets up the foreign patent has not established an essential element of the statute as construed by the Supreme Court. That a stranger has taken out a foreign patent for the same invention affords no evidence of the consent or authority of the American patentee.

The defendant has the burden of proving, as an essential fact, that the foreign patent was obtained by the American patentee, or with his consent. Is this fact sufficiently proved in this case? The answer avers that Sherman obtained letters patent of Great Britain, granted and published in 1883, for the term of 14 years. There is offered in proof a British patent, A. D. 1883, 19th May, No. 2,510, which proves that the invention of the patent in suit was previously patented in a foreign country. It is entitled:

"Letters patent to Alexander Melville Clark, of the firm of A. M. & W. Clark, of 53 Chancery Lane, in the county of Middlesex, Fellow of the Institute of Patent Agents, for an invention of improvements in, and connected with, spinning spindles and their bearings, communicated to him from abroad by Albert Read Sherman," etc.

The provisional specification and specification contain the words, "Communicated to me from abroad by Albert Read Sherman," etc.

It is argued that authority is proved by the fact of communication, and by the possession by Clark of a substantially correct copy of Sherman's specification as it then stood on the files of the United States Patent Office. For what other purpose could it have been communicated by Sherman than for the procurement of a patent? is the inquiry of defendant's counsel. Assuming that there is full proof of a voluntary communication of his invention by Sherman to Clark, does it follow that the communication was for the purpose of procuring a patent, or that Sherman authorized Clark to procure a patent? Might not a mere intermeddler, who had been informed of the invention by the American patentee, in procuring a patent for his own purposes and without authority, use the words "communicated to me from abroad by," etc.? To say that A. has communicated to me an invention does not seem to me substantially equivalent to saying that he authorized me to procure a patent. The burden is on the defendant to show authority. He shows something short of this, to wit, a communication of an invention. This, it is true, would be a natural step preceding an authorization of an agent to procure a patent, but it might well have been made without such purpose. Proof of a communication does not shut out a reasonable probability that there did not accompany the communication any authority to procure a patent. The copy of the British pat-

ent affords no direct evidence of authority. The argument, in substance, is that it proves a communication, which raises a presumption of authority to procure a patent. I seriously doubt, however, whether we may safely say that a presumption of this character arises, or that proof of the communication of an invention amounts to prima facie proof of authority to take out a foreign patent. Upon mere proof that a patentee has described or communicated his invention, is it proper to cast upon him the burden of proving that he did not authorize the taking out of a foreign patent?

As the defendant has filed a motion for leave to take further testimony on this point, it is sufficient to say that it is by no means clear that such evidence is not necessary, that the defendant should forthwith close his testimony, and that at present a supplemental brief from the complainant on this point seems unnecessary.

The motion for leave to take further testimony is granted.