WESTINGHOUSE ELECTRIC & MFG. CO. v. STANLEY INSTRUMENT CO.

(Circuit Court of Appeals, First Circuit. June 14, 1905.)

No. 504.

1. PATENTS—SUIT FOR INFRINGEMENT—LEAVE TO FILE BILL OF REVIEW.

Where it is claimed that a patent in suit, and against infringement of which an injunction is sought, expired pending an appeal, because of the expiration of a foreign patent for the same invention, the facts in relation thereto should be presented to the appellate court on or before the hearing on the merits; and the defendant is chargeable with laches, if he fails to so present them, which will warrant the court in denying him leave to file a supplemental bill, in the nature of a bill of review, to enable him to present the question after the case has been finally determined on the merits, unless on terms named in the opinion.

2. SAME.

In re Gamewell Fire Alarm Telegraph Co., 73 Fed. 908, 20 C. C. A. 111, applied.

3. SAME—LIMITATION OF TERM BY FOREIGN PATENT—CONSTRUCTION OF STATUTE.

The provision of Rev. St. § 4887, as it stood before its amendment in 1897, that "every patent granted for an invention which has been previously patented in a foreign country shall be so limited as to expire at the same time with the foreign patent," is plain and unambiguous, and not to be extended by construction, and applies only to cases where the inventions actually claimed in the foreign and domestic patents are identical; it is not sufficient that the foreign patent may disclose the invention of the later United States patent, where it is not therein claimed.

4. SAME—ELECTRIC MOTORS.

The terms of the Tesla patents, Nos. 511,559 and 511,560, for an improved method and means of operating electric motors, *held* not limited by prior British patents to the same inventor, because the latter do not claim the same inventions.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

On petition of appellee, the respondent below, for leave to apply to the Circuit Court for leave to file a supplemental bill in the nature of a bill of review, or to amend the judgment on appeal (133 Fed. 167).

W. K. Richardson and Thomas B. Kerr, for appellant.

Charles E. Mitchell, Wm. Houston Kenyon, and Henry B. Brownell, for appellee.

Before PUTNAM, Circuit Judge, and ALDRICH and BROWN, District Judges.

PUTNAM, Circuit Judge.   On this appeal we entered a decree against the petitioner, the respondent below and now the appellee, who brings this petition, which it bases on the claim that the case is within section 4887 of the Revised Statutes as it stood before it was amended, and that, pending this appeal, the patents sued on expired by limitation as therein provided.   It prays that this court shall so amend its judgment as to deny any injunction, and as to direct that the accounting shall cease as of the date when the patents expired, or that the petitioner may have leave to proceed in the proper way in the Circuit Court to accomplish the same result. The petition has been answered, and proofs taken, and the whole submitted to us on briefs.

The decree of the Circuit Court was in favor of the petitioner, and the complainant below appealed.   The patents in suit issued on December 6, 1893, on applications filed in December, 1888.   The present bill was filed in 1899, and the decree was entered in the Circuit Court on the 16th day of March, 1903.   An appeal was promptly taken, and the same came on for hearing before us in April, 1904.   Judgment was rendered by us, as already said, on September 9, 1904 (133 Fed. 167), reversing the decree of the Circuit Court, and remanding the case with instructions to enter a decree in favor of the complainant for an injunction and an accounting, and to take such further proceedings as might be required not inconsistent with our opinion.   Afterwards, on the application of the present petitioner, the mandate was stayed, and the petitioner applied to the Supreme Court for a writ of certiorari, which was denied on November 28, 1904.   This petition was filed on December 7, 1904.

The practice on a petition of this nature has been sufficiently explained by us in In re Gamewell Fire Alarm Telegraph Co., 73 Fed. 908, 20 C. C. A. 111, and in Boston Electric St. Ry. Co. v. Bemis Car-Box Co., 98 Fed. 121, 38 C. C. A. 661.   In those cases we stated to what extent appellate tribunals will ordinarily go with regard to the merits on an application of this character, and also as to laches; but our own records satisfy us that on this petition we can dispose of all essential questions.   Therefore, in view of the multiplied and protracted litigations over the patents in suit, and in view also of the fact that they now have only a few years to run, we deem it our duty to consider everything which we can consider, and end this suit so far as it is in our power to do so.

The respondent in this petition, the complainant below, maintains that the foreign patents were for identically the same subject-matters as two certain patents issued to the complainant in April, 1889, and, therefore, before the patents in suit issued.   It therefore further maintains that, if the present position of the petitioner were

correct, to the effect that the foreign patents covered the same subject-matters as the patents in suit, it follows that the patents issued in 1889 were also for the same subject-matters, and that therefore they were a complete defense on the merits of the present bill.   Consequently it urges that, as the petitioner, from its standpoint, could have set up the patents of 1889 as a defense to the merits, it is guilty of such laches that the petition must be dismissed.   If this were all that there is of the petition, it would meet all of the petitioner's propositions; but, as we go on, it will be perceived that it is not all.

The foreign patents to which the petition relates expired, one on the 16th day of April, 1903, which was a few days after the decree entered in the Circuit Court, and the other on the 3d day of December, 1903, which was after the present appeal was taken, and before it was heard by us.   We therefore have a question of laches which cannot be wholly overlooked.   Under the circumstances, it was the duty of the petitioner to have brought these facts to our attention at or before the time the appeal was argued on its merits; and it failed in its duty in allowing us to proceed to hearing an issue with regard to an injunction which, from the standpoint of the petitioner, had ceased to involve anything except moot questions. It was its duty to have then presented the facts which it now brings to our attention, instead of holding them in reserve for further consideration after we had been allowed, by its entire silence, to investigate and dispose of the voluminous and difficult questions which the record involved.   It had ample opportunity to have seasonably brought before us, in an informal manner, all the questions which the present petition raises, as was fully explained by us in Mossberg v. Nutter, 124 Fed. 966, 60 C. C. A. 98.

As the foreign patents referred to are British patents taken out by the same inventor, Tesla, as those in issue, relating to the same branch of the same art, the fact alleged in the petition, to the effect that they were not discovered except as the result of search made after our judgment was entered on September 9, 1904, does not avail to excuse the petitioner.   In Re Gamewell Fire Alarm Telegraph Co., 73 Fed. 908, 913, 914, 20 C. C. A. 111, already referred to, we pointed out that, as there is no limit to the amount of published material, there will be no end to the number of applications based on new discoveries thereof, one after another, unless very strict rules are insisted on in reference thereto.   Our expressions were approved by the Circuit Court of Appeals for the Sixth Circuit in Kissinger-Ison Co. v. Bradford Belting Co., 123 Fed. 91, 92, 59 C. C. A. 221.   Certainly, in a case which has involved so much litigation and so much investigation as this now before us, it is impossible to excuse the petitioner for not having discovered the British patents, and brought them to our attention seasonably, at the time and in the manner we have explained.   The present case goes further, because the petition admits that no search for foreign patents with regard to the present question was made until after our decree of September 9, 1904, and that the previous searches were in regard to the prior art.   It will appear, however, that we have no occasion

to determine absolutely on a question like this now before us, which involves not merely the petitioner but also the general public, whether this laches would justify us in wholly denying relief; but on account thereof, even if we should grant any relief, the petitioner should be held to stand practically in the ordinary position of one asking leave to proceed in review on newly discovered matter, to the extent that, before the proceeding in review can make substantial progress, the judgment entered must be performed so far as it is not absolutely unjust that it should be. Ricker v. Powell, 100 U. S. 104, 107, 108, 25 L. Ed. 527; Story's Equity Pleadings (10th Ed.) § 406. Of course, in this case, this rule cannot be strictly applied, because there is no final decree; but, if we should grant leave to file a bill in the nature of a supplemental bill, equity would require us, for the reasons we have stated, to proceed in this respect by analogy to the practice with reference to bills of review. On this petition, however, the merits are so clearly against the petitioner that it is our duty to hold the case firmly, with the view of preventing further unnecessary litigation.

The statute on which the petitioner relies is, as we have said, section 4887 of the Revised Statutes [U. S. Comp. St. 1901, p. 3382], as it stood before it was amended, as follows:

"No person shall be debarred from receiving a patent for his invention or discovery, nor shall any patent be declared invalid, by reason of its having been first patented or caused to be patented in a foreign country, unless the same has been introduced into public use in the United States for more than two years prior to the application. But every patent granted for an invention which has been previously patented in a foreign country shall be so limited as to expire at the same time with the foreign patent, or, if there be more than one, at the same time with the one having the shortest term, and in no case shall it be in force more than seventeen years."

In Bate Refrigerator Company v. Sulzberger, 157 U. S. 1, 36, 15 Sup. Ct. 508, 516, 39 L. Ed. 601, the language of this provision was spoken of generally as "so plain and unambiguous that a refusal to recognize its natural, obvious meaning would be justly regarded as indicating a purpose to change the law by judicial action based upon some supposed policy of Congress." So it seems to us as applied to the present case. It is a "patent" granted for an invention which has been previously "patented" in a foreign country, etc., which is limited. It is a domestic patent against a foreign patent. All through, it is one patent against another. In the United States, nothing is patented except what is covered specifically by the claims required by statute. The same was the law of England at the time the patents relied on by the petitioner were there issued. Edmunds on Patents (2d Ed.) 181 et seq. Yet, with a single exception, which we will refer to later, the petitioner all through maintains that section 4887 of the Revised Statutes applies, not only where the foreign patent covers what is patented in the United States, but where it describes what is so patented. At one point of its brief it states that the issues raised are entirely different from the question of double patenting. At another point the brief so far emphasizes this position as to maintain, in clear error, that Commercial Company v. Fairbank Company, 135 U. S. 176, 10 Sup. Ct. 718, 34 L. Ed. 88, sus-

tains the petitioner.  Again, it states formally four major propositions, three of which are clearly in this line, while the fourth is equivocal, and, if it has any other aspect, will be covered by what will be said further on.  It reiterates the proposition that the invention in issue was disclosed in the foreign patents, so that, as it says, "the English public obtained a complete disclosure of the invention, and in 1903 obtained the right to freely use the same." The two facts stated in this citation may be true.  The legal effect of them will be found to be inconsequential, so far as this case is concerned.  Elsewhere, the proposition is put definitely, as follows:

"A prior foreign patent will limit the term of a later United States patent to the same inventor, when the foreign patent is of such character that its disclosure would, if contained in an earlier United States patent issued to the same inventor, without reservation, prior to the filing of a later United States patent, operate as an abandonment of the invention of the later United States patent, or when the foreign patent is of such character that its disclosure, if made by another person earlier in the art, would anticipate the later United States patent."

These positions find no support in the natural reading of section 4887 of the Revised Statutes; and the provisions of this section are too severe, as apparent to the ordinary comprehension, and as has been since declared by Congress by its amendments thereto, to justify any relaxation which would extend it beyond its letter.  No authorities can be found to sustain the petitioner on this point, unless it is an expression in Walker on Patents (4th Ed. 1904) 150. The learned author there cites as authority for the proposition Commercial Company v. Fairbank Company, 135 U. S. 194, 10 Sup. Ct. 718, 34 L. Ed. 88, already referred to, as also does the petitioner; but a careful examination of that decision fails to disclose any justification for assigning to it such an effect.  In view of the fact that the learned author is discussing an obsolete statute, it is not at all strange that he nodded.  On the other hand, Robinson on Patents, in section 623, reiterates the natural reading of the statute, as follows: "In order that the term of a foreign patent may thus limit that of the domestic patent, it is essential that the inventions covered by the two patents should be identical."  It will be noticed that the author uses the word "covered," and not "shown" or "disclosed."  He makes his position clear by his note to this section, wherein he cites a decision that the foreign patent is not effective unless the claim, as well as the patent itself, describes the same invention.

The petitioner relies on Siemens v. Sellers, 123 U. S. 276, 8 Sup. Ct. 117, 31 L. Ed. 153; but that case, so far as it touches the present question, discusses merely the identity of what was in fact patented.  This is emphasized at page 283 of 123 U. S., page 119 of 8 Sup. Ct. (31 L. Ed. 153), where the court carefully explains the claim in the English patent, and not merely what the patent disclosed.  The same observation applies generally to Commercial Company v. Fairbank Company, supra, which is also strenuously relied on by the petitioner.  The discussion in the opinion in the last case cannot be said to particularly bind the court, because it

was carried out for the most part by simply making long extracts from the opinion passed down in the Circuit Court; but, at the foot of page 188 of 135 U. S., page 722 of 10 Sup. Ct. (34 L. Ed. 88), it speaks of the question of the identity of one foreign patent with the patent then in suit. What has this to do with what merely is disclosed by either one patent or the other? The petitioner especially relies on what is said near the foot of page 194 of 135 U. S., page 724 of 10 Sup. Ct. [34 L. Ed. 88], that the test is whether, if a person in the United States, after the issue of the United States patent, should commence the manufacture of a patented article by the precise process described in the foreign patent, the court would properly restrain him. To begin with, this, as already said, is a mere quotation from the opinion of the Circuit Court, and not an expression devised by the Supreme Court; and it is not to be assumed that where an appellate tribunal, as in this case, quotes long extracts, it is held to be bound by all the expressions contained in them. However, for that particular case, this test was a sufficient one, and it was not necessary, therefore, for the court to state any qualifications with reference thereto. For other cases, including the one at bar, the test is not sufficient. This is evident wherever the foreign patent covers a substantial and important improvement on what was patented in the United States. A test of this character is too dangerous unless applied to the circumstances of the particular case in which it is used. Therefore we are unable to find any authority which requires us to disregard the natural reading of section 4887 of the Revised Statutes, and no authority which leads in that direction.

As we have already said, at one point the petitioner disregards this main proposition, and asserts identity of patenting. As to this, it should be first observed that, as the case is finally worked out, the petitioner places no reliance on one of the English patents, and as to the other, so far as concerns any alleged identity of patenting, it relies only on claim 4, as follows:

"(4) The method of operating a synchronizing motor, which consists in passing an alternating current through independent energizing circuits of the motor and introducing into such circuits a resistance and self-induction coil, whereby a difference of phase between the currents in the circuits will be obtained, and then, when the speed of the motor synchronizes with that of the generator, withdrawing the resistance and self-induction coil, as set forth."

The petitioner maintains that, on the issue of identity of the patent, this claim falls within the decisions of the Supreme Court to which we have referred; but we do not so understand it. These were based on the proposition that a difference in mere detail does not avoid identity. This is undoubtedly true, as stated in Sawyer Spindle Co. v. Carpenter (C. C.) 133 Fed. 238, 240, where apparently the leading authorities bearing on this question are grouped. In Siemens v. Sellers, supra, relied on by the petitioner as to this particular topic, we refer again to page 283 of 123 U. S., page 119, of 8 Sup. Ct. (31 L. Ed. 153), where the opinion explains the fact that the furnace described in each patent there in question was the same in all essential particulars, while the English specification was only

more detailed, and the drawings more minute and full. So in Commercial Company v. Fairbank Company, supra, which the petitioner specially relies on in this particular connection, it is plain that the court regarded what was patented in the United States and in all the foreign countries as identically the same in substance. This was elaborated and made clear at pages 190 and 191 of 135 U. S., page 723 of 10 Sup. Ct. (34 L. Ed. 88), where it was pointed out that what were the apparent differences in the various patents arose from the fact that the inventor deemed himself as addressing, within the foreign jurisdictions, a class of persons more skilled in the general topic to which the invention related than would be found in the United States.

It is true that claim 4 of the British patent, already quoted, necessarily includes all the elements of the patents in issue here; but it also includes other elements, establishing a new combination which is an essential, novel, and patentable improvement on what was claimed in the patents before us on appeal. This follows from what is said in the petitioner's brief, that what was accomplished by claim 4 of the British patent referred to was "a motor which obtained synchronous speed, and thereafter, at will or when desired," had facility for "withdrawing the resistance and self-induction coil." This is made clear by the extract from the British patent, cited by the respondent in this petition in its brief, as follows:

"In other words, by a certain change in the circuit connections of the motor, it is converted at will from a double circuit motor, or such as is now known as a Tesla motor, and which will start under the action of an alternating current," etc.

It is also made clear by the same brief, where it explains this claim as covering a convertible motor, in which the split-phase invention claimed in the patents here in suit is in no way a more prominent element than the polyphase patents which belong to a prior stage of the art. This claim 4, therefore, covers not a mere improvement on either the split-phase invention or the polyphase invention separately. That it covers an invention by which a convertible motor is produced necessarily takes the case out of the field of identity with either the earlier polyphase or the later split-phase patents.

Therefore, in view of the fact that the propositions involved arise clearly on the face of this petition and our own records in this litigation, we find the case within the classes to which we have said that an appellate tribunal, on a proceeding of this character, may consider and pass on every question which might be raised before it or before the court of first instance; but, as we are clear that the petition has no merits, we dispose of it against the petitioner on that ground alone, leaving the question of laches in the form in which we have already put it.

Ordered: The petition filed by the Stanley Instrument Company on December 7, 1904, is denied, and the mandate will issue forthwith.