## THOMSON–HOUSTON ELECTRIC CO. v. McLEAN.

(Circuit Court of Appeals, First Circuit. April 11, 1907.)

### No. 668.

1. PATENTS—TERM—EXPIRATION OF FOREIGN PATENT.

The rule applied that a patent is not exempted from the operation of Rev. St. § 4887 [U. S. Comp. St. 1901, p. 3382], making it expire with a prior foreign patent for the same invention, because there may be differ-

ences in detail between the devices of the two patents, unless such differences affect the essence of the invention in a patentable sense.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 188½. See Westinghouse Co. v. Stanley Instrument Co., 138 Fed. 823, 71 C. C. A. 189.]

2. SAME—ELECTRIC METER.

The Thomson patent, No. 448,894, for an electric meter, expired on July 8, 1904, with the British patent for the same invention.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Drury W. Cooper (Thomas B. Kerr, on the brief), for appellant.

Robert H. Parkinson (Henry C. Stetson, on the brief), for the appellee.

Before PUTNAM, Circuit Judge, and ALDRICH and HALE, District Judges.

PUTNAM, Circuit Judge. This is a bill in equity alleging infringement of letters patent No. 448,894, issued on March 24, 1891, to Elihu Thomson on an application filed on September 26, 1890. The patent contains 18 claims, but the bill alleges specifically infringements of only claims 12, 13, 14, and 17. Claims 15 and 16 have relation to the interpretation and effect to be given to those on which the bill is specifically rested, and therefore we will recite herein claims 12 to 17, each inclusive. The only issue before us arises on a plea alleging that the invention sued on had been previously patented in Great Britain by letters issued on December 23, 1890, as of July 8, 1890, so that, under the laws of Great Britain, the patent expired on July 8, 1904, and so that, consequently, the patent in suit, by force of section 4887 of the Revised Statutes [U. S. Comp. St. 1901, p. 3382], expired also on the day last named, and thus before the bill was filed. The plea was joined by a replication, thus bringing before the court issues of both fact and law. The Circuit Court rendered a judgment for the respondent, and the complainant appealed to us.

The introduction to the patent in suit describes it as consisting "in certain details of construction and combinations" concerning electric meters for use on either continuous or alternating current circuits, "more particularly applicable to meters wherein an electric motor is employed, and the consumption is indicated or registered by the speed of such motor." The specification also states that the meter as to which the patentee has shown the improvements covered by the patent in suit is like that described in an application filed on August 26, 1889, which resulted, as we understand, in the patent for the well-known Thomson meter of the motor type. Having especial reference to this, the counsel for the complainant says:

"The issues, then, have to do with meters that record electrical energy; that is, they take account of the amount of current (the unit being called an ampere), and the pressure at which it is flowing (the unit of this being a volt). And the electrical circuits are so arranged that the rotating part, which is termed the 'armature,' revolves at a rate proportional to the product of the amount of current by the pressure. This product is electrical energy, whose unit is called the watt. As either the amount of the pressure or the current varies, the speed of rotation varies; and, as the counting train which actuates the dials is driven by the armature shaft or spindle, the dials record and

add or sum up, or integrate, the energy, or watts, flowing through the circuit, taking account of all variations. Such a device is called an 'integrating,' or 'recording,' watt meter.

"It will be made to appear that Prof. Thomson devised two general types of meter of this sort; one having a rotating, and the other an oscillating armature. The patent in suit contemplates certain improvements upon the rotating form."

The complainant, also, explains that the patent in suit covers other improvements in the construction of meters, with which the claims involved here have nothing to do. These are quite fully explained in the specification, in part as follows:

"W is an artificial resistance in the circuit of the armature, but external thereto, and made high in amount, so as to limit the current and avoid the necessity for winding the armature of extremely fine wire to stand considerable potential. By making this resistance very high in proportion to the armature-resistance, a practically-constant current in such armature under conditions of change of speed is attained, owing to the fact that the variations of resistance and counter electro-motive force in the armature itself will be so small in proportion to the total resistance as to be practically negligible. The high resistance, W, will therefore also have an important function practically abolishing any variations in the action of the motor arising from any change of resistance at the commutator-contacts, and will for this and the reason above noted add greatly to the regularity of action of the motor."

The important claims are as follows:

"(12) In an electric meter, the combination, with an electric motor and a register for counting the movements thereof, of an artificial resistance external to the motor and placed in the circuit of such motor wherein a constant current is to be maintained; such resistance being the larger part of the total resistance of such motor-circuit.

"(13) The combination, with an electric meter operated by alternating currents, of a noninductive artificial resistance placed in that portion of the meter-circuits wherein a constant current is maintained and made to form the larger part of the resistance of said circuit.

"(14) The combination, with an electric motor operated by alternating currents, of a register for counting the movements of said motor, and a noninductive artificial resistance external to the motor and placed in the meter-circuit including the armature and commutator; such artificial resistance being made large in proportion to the resistance of the normal resistance of the armature and commutator.

"(15) The combination, in an electric meter, of an electric motor having its field traversed by current varying with the consumption and an armature for such motor placed in a constant-current circuit, in combination with an artificial resistance placed in the armature-circuit external thereto.

"(16) The combination, substantially as described, of an electric-motor field-coil, an electric-motor armature-coil provided with a commutator and placed in an alternating current circuit, including a noninductive resistance external to the armature and commutator, as and for the purpose described.

"(17) In an electric meter for measuring alternating electric currents, the combination, with that part of the motor which is included in a constant alternating-current circuit, of a noninductive resistance external to such part of the motor and made large in amount in proportion thereto."

As the complainant makes much of the fact that the external resistance covered by the claims on which the bill is rested is, as said in claim 12, "the larger part of the total resistance of such motor-circuit," we deem it important to call attention to the fact that claims 15 and 16 demand only an external resistance, without any condition as to its proportionate relation to the total resistance of the circuit to which the external resistance is incident. The complainant explains

this on the ground that they were evidently drawn "to anticipate an attempted evasion of the patent by making the external resistance somewhat less than that of the armature."

The complainant urges on us that whether the patent in suit expired as an entirety with the British patent cannot be determined, except by making a comparison claim by claim; so that, as it maintains, the mere fact that only one or more of the claims in the British patent were coequal with only one or more of the claims in the domestic patent would not affect the claims in the domestic patent not thus coequal, but would leave them still to run out the expressed term of the patent as granted. The complainant does not bring to our attention any controlling authority on this proposition. The nearest approximate is Siemens v. Sellers, 123 U. S. 276, 283, 8 Sup. Ct. 117, 31 L. Ed. 153, which is not favorable to the complainant. However, we are not called on to pass on this issue. It is sufficient for our purpose, as said by Mr. Walker, at page 151 of Walker on Patents (4th Ed.) that section 4887 of the Revised Statutes [U. S. Comp. St. 1901, p. 3382] applied, so far as the issue here is concerned, to such claims in suit as correspond with any invention covered by some prior foreign patent, even though others of the claims of the domestic patent do not thus correspond.

The British patent was amended several years after it issued. It is so correctly and clearly shown by the opinion of the learned judge of the Circuit Court that this fact cannot in any way avail the complainant that we leave the case, so far as this topic is concerned, to rest on that opinion, without any additional comments in regard thereto.

The claim in the British patent on which the respondent relies is claim 2. The better way to exhibit this claim is in the form of the parallel columns which are given by the complainant in its brief, and which disintegrate, analyze, and compare its various elements in connection with those of claim 17 of a prior patent issued to the complainant, as follows:

| Claim 17 of Patent 432,654. | Claim 2 of British Patent. |
|---|---|
| The combination, in an electric meter, of coils or sets of coils in moving relation one to the other, and placed, respectively, in the main and in a branch circuit or their equivalent, as described, | An electric meter having stationary coils in a main circuit, and movable coils forming an armature in a shunt circuit around the work, and a supplemental resistance in the said armature circuit; combined with |
| and a copper plate and magnet for absorbing the dynamic energy of the coils carried upon the structure whose movements are registered to form a record of the current consumed. | a retarding device comprising a close conductor moving in a permanent and constant magnetic field, which is independent of and uninfluenced by the currents flowing in the aforesaid coils, for the purposes above specified. |

It will easily be seen from this analysis of claim 2 of the British patent that, except as we will hereinafter state, it contains all the elements of, for example, claim 12 of the patent in suit; that is, (1) electric meter, (2) of the motor type, (3) with artificial external resistance, (4) with the retarding device which is implied in the meter of the motor type. It does not specify a register, nor that the meter is of the motor type; but, for plain reasons, no question is made in this case on account of the omission to name in the claims the motor or the register, and no assertion is made of any differences, except as we will hereinafter state. The history of the art makes it plain that, so far as the comparison is concerned, the only true novelty in either is what is described in one as an artificial external resistance, and in the other as a supplemental resistance. The learned judge of the Circuit Court held that there were no differences of a patentable character, that is, involving invention, and that therefore the statute pleaded by the respondent controls the case.

The complainant shows that the improvements in the claims in suit are said to relate specifically to meters with motors of the rotary type, while the British patent covers also the oscillating type. So far as we are able to perceive, the fact that the British patent groups two kinds of meters, even if the domestic patent was occupied with only one, could avail nothing, unless in connection therewith there was some patentable difference in the function or mode of operation, or in some other particular. Otherwise, the statute could easily be evaded by running into one claim of the domestic patent meters of the rotary type, and into another claim meters of the oscillatory type, thus apparently dividing the grouping in the British patent, but ultimately getting back to cover its entire field. The result of mere division into moieties leaves nothing in the later domestic patent which was not in the earlier foreign one.

In regard to the differences between the claims under consideration in the domestic and British patents, we are referred by the complainant in lump to eight printed pages of the testimony of its expert witness Bentley, without any attempt on its part to analyze that evidence. We, of course, decline to analyze it ourselves, pointing to our rules which require this to be done by the complainant itself, with proper specific references as therein stated. We presume, however, that the particular propositions on this topic to which we will refer, and which have been called to our attention by the complainant at bar, will cover everything it maintains in this direction.

We gather that the Circuit Court understood that the complainant maintained that the retarding device which appears in the British claim is not included in the elements shown by the claims of the domestic patent. This did not mean that a retarding device is not implied in the claims of the domestic patent, but, as stated by the complainant, that the reference to a retarding device which appears in the specification is only incidental. This might well be, because its presence is necessarily implied. The propositions of the complainant with regard to the specific form of the retarding device shown in claim 2 of the British patent are not easy to understand. Its expert says that that device is a good thing, "probably the best form now

known, yet it is not the only retarding device"; and, what is the fact, that the claims on which this suit rests are not limited to any specific form thereof. But nothing brought to our attention shows that there is any patentable difference in favor of either patent on account of the retarding device, or that the force of the second claim of the British. patent was affected by reading into it the retarding device there described, any more than it would be by reading in or reading out stationary coils in the main circuit, or by reading in or reading out of the claims in the patent in suit the register, or by reading in or reading out of the claims in either patent any well-known, implied element necessary to a practical machine.

In fact, we cannot clearly discover that the complainant places any real reliance on any alleged differences, except what it maintains is indicated by the words in claim 12 of the patent in suit, "being the larger part of the total resistance," and by analogous expressions in the other claims in suit, the phraseology of each of which is only slightly changed, and the legal effect of all of which is the same. It insists that these words do not appear in claim 2 of the British patent, and such is the fact. The observations we have already made in this connection with reference to claims 15 and 16 support the proposition that there exists here nothing fundamental or essential, so that these expressions do not in any way represent invention; otherwise claims 15 and 16 would be mere rubbish.

As truly said by the learned judge of the Circuit Court, the mere matter of difference in degree does not ordinarily suggest invention. The learned author of Walker on Patents (4th Ed.) 27, observes: "It is not invention to change the size or degree of a thing, or of any feature or function of a machine or manufacture." Mr. Renwick's practical work, entitled "Patentable Invention," observes very sensibly in regard to this, with reference both to size and proportion, that a mere change does not amount to invention; and it illustrates some exceptions to this by references to Sir Humphrey Davy's safety lamp, and to changes of proportions in chemical combinations which produce essentially new products. This fact is peculiarly illustrated in the present case. Turn again to the words "the larger part," in claim 12. Out of 100 this may be 50 plus, while anything less than "the larger part" would be 50 or 50 minus; in either case the plus or the minus being perhaps quite negligible quantities. It is impossible to say that, under such circumstances, there is any patentable difference between 50 plus, on the one hand, and 50 or 50 minus on the other. In connection with the fact that the specification of neither patent undertakes to give any rule for determining any fixed proportions of the external resistances, it is plain that the ratios are of a character to be determined by the skilled mechanic according to the changes in exigencies, and as to all this the views of the learned judge of the Circuit Court are correct.

Indeed, we may say that, as to all the alleged differences between claim 2 of the British patent and the claims in suit, our attention has not been called to anything in the record establishing invention in behalf of either patent as against the other. The complainant speaks of the differences pro and con only as improvements, without,

so far as we can discover, alleging invention at any point. Indeed, we are justified in understanding that the complainant makes no serious claim of invention in any of these differences, because it urges on us the proposition that the arguments in behalf of the respondent admit that there are differences; and thereupon it cites Thomson-Houston Co. v. Ohio Brass Co., 80 Fed. 712, 724, 26 C. C. A. 107, decided by the Circuit Court of Appeals for the Sixth Circuit, and undertakes to apply here the following words which appear in that opinion, namely: "It is not material to this discussion whether these improvements are patentable or not." It also adds that the Circuit Court fell into its error because, admitting differences to exist, its opinion proceeded to argue that the differences were unpatentable. We would have been very much surprised if so able a tribunal as the Circuit Court of Appeals for the Sixth Circuit had laid down any proposition of the kind maintained by the complainant to be applicable here. Following down the same page to which the complainant refers, the purpose of the observation cited is made clear, because the court states, almost in the same breath, the reason why the improvements were not material, even if they were in fact inventions, but, also, that, if they were not inventions, they covered nothing.

If differences could be set up to defeat the application of section 4887 of the Revised Statutes [U. S. Comp. St. 1901, p. 3382], even when they involve no patentable invention, the statute would have been emasculated, and its application could always have been defeated by trivial and unimportant changes, so that it would be left practically worthless. In Westinghouse Co. v. Stanley Instrument Co., 138 Fed. 823, 829, 71 C. C. A. 189, so much relied on by the Circuit Court, we rested on the fact that the differences between the foreign patent and the domestic patent there in question involved "an essential, novel, and patentable improvement." We were not there required to rule directly on the question pressed on us here, although it is evident that we assumed the law to the contrary to what the complainant maintains. If it had been pressed on us, we would probably have pursued Siemens v. Sellers, 123 U. S. 276, 283, 8 Sup. Ct. 117, 31 L. Ed. 153, farther than we did. It was there said, at page 283 of 123 U. S., page 119 of 8 Sup. Ct., as follows: "A patent cannot be exempted from the operation of the law," that is, section 4887 of the Revised Statutes [U. S. Comp. St. 1901, p. 3382], "by adding some new improvements to the invention." It was held in that case that the domestic patent contained certain improvements not exhibited in the foreign patent; but they did not help the complainant. Neither the decision of the court nor the opinion was directly on the issue before us; but each seems to bear strongly, if not conclusively, in support of the views of the learned judge of the Circuit Court, and of our opinion, that no mere changes in detail which do not affect the essence of the invention as covered by the respective patents can avail this complainant.

The decree of the Circuit Court is affirmed, and the appellee recovers his costs of appeal.